9603.   WATKINS *et al.*, executors, *v.* STULB & VORHAUER.

1. A person actually insane has no power to contract so as to bind himself or his personal representative merely by virtue of the obligation imposed by the agreement. Contracts on his behalf, in order to be binding as such, must be entered into by his guardian legally appointed after commission sued out. If one who is actually insane, but who has not been legally so adjudged, proceeds to execute a contract, the agreement thus made, when taken by itself alone, while not absolutely void, becomes voidable at the option of his personal representative upon such state of insanity being shown. The mere fact that the other party to the contract was ignorant that the person with whom he was dealing was in fact insane, or even that the existence of such insanity could not have been discovered by the exercise of ordinary and reasonable prudence, will not of itself operate to prevent the exercise of such option and privilege on the part of the personal representative. But the contract of one who was insane at the time of the agreement, but who had never been legally so adjudged, ceases to be voidable and becomes valid and binding whenever it is shown that the obligation has been subsequently ratified either by the words or the conduct of the contracting party himself during a lucid interval, or by virtue of what amounts to a confirmation on the part of his personal representative. Civil Code (1910), § 4237; *Bunn* v. *Postell*, 107 *Ga.* 490 (33 S. E. 707); *Orr* v. *Equitable Mortgage Co.*, 107 *Ga.* 499 (33 S. E. 708); *Weeks* v. *Reliance Fertilizer Co.*, 20 *Ga. App.* 498 (2) (93 S. E. 152). Even where there has been no such actual ratification of a contract thus made, but where there had been no adjudication of the fact of insanity, and the opposite party to the contract was ignorant of the other's disability, and had no reasonable cause to suspect it, and the contract was fair and reasonable in its terms, and it is shown that the contract was entered into in good faith, without fraud or undue influence, and was founded upon a valuable and adequate consideration, and that the insane party has actually received the full benefit of the contract, and the parties can not be restored to the status quo; the liability under the contract will be upheld, not so much upon the theory of enforcing the promise because of the making of the contract itself as upon the idea that the insane party ought not to enjoy the full, adequate, and irrestorable benefit of a contract ordinarily merely voidable, without himself complying with the terms thereof. *Woolley* v. *Gaines*, 114

*Ga.* 122, 124 (39 S. E. 892, 88 Am. St. R. 22); 16 Am. & Eng. Enc. Law (2d ed.) 625; Flach *v.* Gottschalk Co., 88 Md. 368 (41 Atl. 908, 42 L. R. A. 745); Memphis National Bank *v.* Sneed, 97 Tenn. 120 (36 S. W. 716, 34 L. R. A. 274, 56 Am. St. R. 788); National Metal Edge Box Co. *v.* Vanderveer, 85 Vt. 488 (82 Atl. 837, 42 L. R. A. (N. S.) 343, Ann. Cas. 1914D, 865).

2. Under the evidence submitted, it was an issue of fact whether the defendant was sane or insane at the time he entered upon the original lease, as well as whether he was sane or insane at the time of its subsequent ratification. And under the additional proof submitted and the rulings made in the first headnote, the court did not err in charging the jury as complained of in the fifth ground of the motion for a new trial, nor in refusing the written requests to charge set out in the tenth and fourteenth grounds.

3. In a lease contract, where there is no stipulation to the contrary, the lessor impliedly warrants that the leased premises shall be open to entry by the lessee at the time fixed for taking possession; and while the lease takes effect upon its execution, and the right of possession and enjoyment of the leased property is a condition precedent to the right of the lessor to recover the rent, yet, before the lessee can repudiate the contract on the ground that possession was wrongfully withheld from him, he must do something to show that he desires possession. He can not remain wholly inactive in reference to possession and justly claim that he is wrongfully excluded therefrom by the lessor. The law does not impose upon the lessor the duty of putting the lessee in possession of the leased premises. It demands only that the possession shall not be withheld when the lessee seeks it under the contract. *Browder-Manget Co.* v. *Edmondson,* 7 *Ga. App.* 843 (68 S. E. 453).

4. Where in a civil case the undisputed evidence clearly establishes a particular fact, it is not error for the judge, in his charge to the jury, to assume or indicate that the fact has been proved. To do so is not a violation of section 4863 of the Civil Code of 1910. *Georgia Railway & Electric Co.* v. *Cole,* 1 *Ga. App.* 33 (57 S. E. 1026); *Dexter Banking Co.* v. *McCook,* 7 *Ga. App.* 436 (66 S. E. 113); *Jones* v. *Wall,* 22 *Ga. App.* 513 (96 S. E. 344).

5 Under the rulings stated in the third and fourth headnotes, the court did not err in charging the jury as complained of in the fourth, sixth, and seventh grounds of the motion for a new trial, for any of the reasons therein stated; nor did the court err in refusing the written requests to charge set out in the ninth, eleventh, and twelfth grounds.

6. The thirteenth ground of the motion for a new trial, assigning error upon the alleged refusal of the written request to charge set out in that ground, is without merit, since the principle of law stated therein was given in charge to the jury in almost the identical language of the request. The request to charge set out in the eighth ground was sufficiently covered by the charge of the court.

7. Nor did the court err in refusing the written requests to charge set out in the fifteenth to eighteenth grounds, inclusive, of the motion for a new trial, since the principles of law contained in sections 3576, 4301,

4302, and 4303 of the Civil Code (1910) are not applicable to the facts in this case.

8. The evidence act does not provide that when a suit is defended by the personal representative of a deceased person, the opposite party is an incompetent witness as to independent facts, knowledge of which was not derived from transactions or communications with the deceased. The admission of the testimony objected to in the nineteenth to twenty-fourth grounds, inclusive, of the motion for a new trial was therefore without error. Gomez v. Johnson, 106 Ga. 513, 515 (32 S. E. 600); Parker v. Salmons, 113 Ga. 1167 (39 S. E. 475); Hall v. Hilley, 139 Ga. 13 (76 S. E. 566); Nugent v. Watkins, 129 Ga. 382 (58 S. E. 888); Cato v. Hunt, 112 Ga. 139 (37 S. E. 183).

10. Complaint is made because the court permitted the plaintiffs to introduce in evidence the will of the defendants' decedent, over the objection that it was irrelevant and was not admissible to show mental capacity to contract. Held: The standard of intelligence required to constitute mental capacity to make a will and the amount of mental capacity required to make a contract are not the same, since "an incapacity to contract may coexist with a capacity to make a will." Civil Code (1910), § 3842. But since the judge in his charge explained such distinction by giving in charge this section of the code, the admission of this evidence, if error, will be treated as harmless. See Neel v. Powell, 130 Ga. 756 (61 S. E. 729).

11. There was sufficient evidence to support the verdict, and the court did not err in overruling the motion for a new trial.

DECIDED JANUARY 14, 1919.

Complaint; from city court of Richmond county—Judge Black. January 24, 1918.

*Sam L. Olive, J. S. Watkins,* for plaintiffs in error.

*Callaway & Howard,* contra.

JENKINS, J. Stulb & Vorhauer, plaintiffs in the court below, were the holders of a lease contract from the Glenn Springs Company, of Spartanburg, South Carolina, of the Glenn Springs Hotel property (which was a summer hotel) for the season of 1915, at a rental of $3,500. On April 1, 1915, this lease was transferred to Bryan Lawrence, by a written contract signed by the plaintiffs and by Lawrence which provided that the lease was to begin on that date and end November 1, 1915. About May 20, 1915, J. H. Milligan, who testified that he had been requested by Bryan Lawrence, prior to April 1, to operate the hotel for him during the season of 1915, went with Watkins, attorney for Bryan Lawrence, to Glenn Springs, and went over the hotel to ascertain its condition, for the purpose of opening the hotel in June. On their return to Augusta, they notified the plaintiffs that the president of the Glenn Springs Company informed them that the

company had never consented to the transfer of the lease to Bryan Lawrence. Thereupon Vorhauer, one of the plaintiffs, and the plaintiffs' attorney, went to Glenn Springs, and on May 26, 1915, obtained the written consent of the Glenn Springs Company for Bryan Lawrence to operate the hotel during the season of 1915, without releasing the plaintiffs from their liability to pay the rent, and on the next day copies of this written consent were delivered to Watkins, the attorney, and Milligan, the agent, of Bryan Lawrence, and about June 1, 1915, Milligan went to Glenn Springs, took charge of the hotel as the agent of Lawrence, and opened and operated it during the summer season of 1915. On June 2, 1915, Bryan Lawrence executed a power of attorney to his son, E. L. Lawrence, empowering him to do any and all things necessary for the operation of the Glenn Springs Hotel during the season of 1915. Bryan Lawrence went to the hospital some time during the month of April, 1915, and was in the hospital most of the time until his death in March, 1916. He died testate, leaving as the executors of his will Joseph S. Watkins, his attorney, and T. J. Morrow. On September 27, 1915, during the lifetime of Bryan Lawrence, the plaintiffs brought suit against him to recover the rental of the hotel, whereupon lunacy proceedings were instituted, and his son, E. L. Lawrence, was appointed as guardian, and filed a defense in this case, setting up (1) that Bryan Lawrence was insane at the time of the execution of the alleged contract, and therefore not bound by its terms; and (2) that the plaintiffs failed to deliver the hotel property to Bryan Lawrence, or his agents, at the time specified in the contract, and that this failure to so deliver said hotel relieved Bryan Lawrence of the contract, or if it did not wholly relieve him of the contract, he was entitled to have credit for whatever damages he suffered by reason of such delayed delivery. Upon the death of Bryan Lawrence his executors were made parties defendant, and upon the trial the jury returned a verdict in favor of the plaintiffs, for the full amount sued for. The defendants made a motion for a new trial, which was overruled, and to this ruling the defendants excepted.

Upon the question of the plaintiffs' rights under a contract where a plea of insanity had been interposed in behalf of the defendant, the judge charged the jury in substantial accord with the principles of law set forth in the first headnote of this opinion. On each of the issues of fact as made by the evidence upon the

several questions thus involved, the jury was authorized to find in favor of the plaintiffs. The rulings stated in the headnotes do not require elaboration.

*Judgment affirmed.* *Wade, C. J., and Luke, J., concur.*