HOLMES *v.* MADDOX, administrator.

No. 8683.   August 12, 1932.

374

*S. W. Sturgis* and *E. L. Stephens,* for plaintiff.

*W. A. Dampier, Lester F. Watson,* and *G. C. Bidgood,* defendant.

RUSSELL, C. J. (After stating the foregoing facts.) As the ruling upon the admissibility of the evidence transpired first, we shall first consider the correctness of that ruling. Mrs. Victoria Holmes, the plaintiff, testified to certain transactions and communications which had occurred between herself and the defendant in the action as originally brought. However, before the trial the defendant, B. F. Maddox, died, and W. D. Maddox had qualified as his administrator and been made a party. As will be seen from the statement of facts, the action is one in which Mrs. Holmes asks for injunction and the setting aside of a deed executed by her to Maddox, as well as other stated relief, special and general. The petitioner alleged, in brief, that she executed a deed to Maddox to land upon which he obtained a loan of $4500; that the named consideration of the deed was $14,000, while the real consideration was to be the sum of $2000, the amount to be borrowed to discharge a debt due the Canadian American Mortgage and Trust Company. The petitioner alleged that at the times and in the manner stated she had repaid the $2000, and prayed that the deed be reformed so as to speak the truth; that she recover $2500 with interest, the difference in the amount she owed on the land and the loan placed thereon by Maddox; that Maddox be required to execute and deliver her a quitclaim deed; that Maddox be enjoined from in any way interfering with petitioner's right and possession of the land; and for general relief. At the conclusion of the testimony the court ex-

cluded all the testimony delivered by Mrs. Holmes and her husband, J. L. Holmes. In this ruling we think the court erred.

The Civil Code (1910), § 5858, provides: "No person offered as a witness shall be excluded by reason of incapacity, for crime or interest, or from being a party, from giving evidence, either in person or by deposition, according to the practice of the court, on the trial of any issue joined, or of any matter or question, or on any inquiry arising in any suit, action, or proceeding, civil or criminal, in any court or before any judge, jury, sheriff, coroner, magistrate, officer, or party having, by law or consent of parties, authority to hear, receive, and examine evidence; but every person so offered shall be competent, and compellable to give evidence on behalf of either or any of the parties to the said suit, action, or other proceeding, except as follows:" To this general rule the first exception is that "Where any suit is instituted or defended by . . the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the . . deceased person, as to transactions with such . . deceased person, whether such transactions or communications were had by such . . deceased person with the party testifying or with any other person." It will be noted that under this exception only the *opposite party* shall not be admitted to testify against the personal representative of the deceased person as to transactions or communications with such deceased person. As there are portions of the evidence of Mrs. Victoria Holmes which do not relate to any transactions or communications with Maddox, the court erred in ruling out these portions of her testimony, when he excluded *all* of her testimony. Certainly the plaintiff would have the right to prove her ownership of the land, her possession, the value of the land, the amount she owed at that particular time prior to any of the alleged transactions with Maddox, established by the records, if the original documents are not available, or what amounts are claimed to be due as shown by these deeds to Maddox as well as any other person. This would not be a statement of any communication with Maddox, or that the transactions evidenced by the record were with Maddox. None of petitioner's evidence should have been excluded under the objections offered, unless it clearly appeared that this portion of the evidence related to transactions and communications between the petitioner and the intestate.

We think also that the court erred in excluding the testimony of petitioner's husband. It was rejected upon the ground that this witness was the agent of his wife. If a witness is the agent of the surviving party where an action has been either instituted or defended by the personal representative of the adverse party, or if the witness is interested in the result, the law disqualifies him from testifying. But it appears from the record in this case, both from the testimony of Mrs. Holmes and of J. L. Holmes, that both testified unequivocally that Holmes was not and had never been the agent of his wife. Holmes testified that in the transaction that he had with Maddox with relation to this land, he was influencing his wife for the benefit of Maddox, and at his instance. In view of the positive testimony to the effect that Holmes was not the agent for his wife, no matter how strongly that testimony may have been contradicted, the fact as to whether Holmes was the agent for his wife was one to be determined by a jury, and not by the court. According to the record this testimony on this point is uncontradicted, and the witnesses were both competent to testify as to the existence or non-existence of the agency, because it is not easy to perceive how the creation of this relationship depended on any transaction or communication with the deceased. The evidence that J. L. Holmes, husband of the plaintiff, was present and saw the transaction, and heard a conversation between Mrs. Victoria Holmes and B. F. Maddox, at the time she made the deed to Maddox, does not show as matter of law that he was her agent so as to disqualify him as a witness. But if there be other facts or circumstances from which agency of a husband for his wife may be inferred, the jury must raise the inferences, determine their weight, and reach their own conclusion on that subject.

Miss Mamie Graham, whose competency is not attacked in any way, testified: "I had a conversation with him [B. F. Maddox] about this transaction between him and Mrs. Holmes sometime in the fall of 1929. He said that Mr. Holmes got him to put Mrs. Holmes's place in the loan to take up the old loan, and that he put it in for enough to take up what J. L. [Holmes] owed him above that. I think he told me that the old loan was for about $2000. He said further that if Johnnie B. [J. L. Holmes] would give him $1000 he would deed it back to him. . . He did not say anything about Mrs. Holmes owing him anything; he said Johnnie B.

got him to put Mrs. Holmes's place in the loan. He said further that all the taxes and interest was paid up to that time, and that Johnnie had given a rent note to carry it until fall, and that he didn't know how he was going to come out in that; he said he needed the money, that he could take a rent note to the bank, and Mr. Keen and Curl would loan him the money until fall." This testimony on the crucial issues of the case would have authorized a jury to grant at least some of the relief for which the plaintiff prayed, if the portions of Mrs. Holmes's testimony which did not relate to any transaction or communication with the deceased had not been stricken from the record.

*Judgment reversed. All the Justices concur.*