654

ARNOLD, executor, *v.* FREEMAN *et al.*

No. 10767. NOVEMBER 15, 1935. REHEARING DENIED FEBRUARY 21, 1936.

*W. A. Slaton,* for plaintiff in error. *C. E. Sutton,* contra.

HUTCHESON, Justice. W. F. Freeman and others filed a petition to set aside a deed executed by Mrs. Sarah F. Arnold to W. B. Arnold, alleging substantially as follows: The plaintiffs, the defendant, and C. J. Arnold are the heirs at law of Mrs. Sarah F. Arnold, who died in August, 1933, leaving a will which was denied probate in solemn form. C. S. Arnold was appointed temporary administrator of the estate. Since 1930 Mrs. Sarah F. Arnold had been in feeble health, being 75 years of age, and physically and mentally unable to transact any business. In 1929 W. B. Arnold came to make his home with his parents. He was insolvent, having no property whatever, and he afterward acquired no property except such as he had received from his mother. B. C. Arnold, the father of W. B. Arnold, left a considerable estate, and the heirs agreed to defer a division thereof until the death of Mrs. Arnold; but W. B. Arnold by taking advantage of Mrs. Arnold obtained possession of all or the greater part of said estate, and he purchased large amounts of cotton on which he lost a large amount of money. Mrs. Arnold was kept ignorant of the misuse of these funds, and W. B. Arnold gradually gained control over her mind and will, so that she would perform any act or sign any paper at his request, though unable to comprehend the same. In order to further his scheme to gain complete control and possession of all the assets of the B. C. Arnold estate and of Mrs. Sarah

F. Arnold, W. B. Arnold caused her to execute an alleged will and a deed apparently dated January 2, 1931 (the real date being unknown), wherein he was made executor of her estate without bond, and a deed conveying to him all of her real and personal property. The deed expressed a consideration of caring for her, but he was unable to do so. The deed was obtained by fraudulent acts and practices on the fears and sympathies of Mrs. Arnold, who was not mentally competent to appreciate the act of making the conveyance at the time it was signed. This deed is not the act of Mrs. Arnold; she was ignorant of its legal purport, and mentally incompetent to understand the nature of her act; her mind was imposed on by the stronger will of W. B. Arnold; and the deed was procured by him in order to give him the entire estate to the exclusion of the other heirs at law. The petitioners are informed that Mrs. Arnold did not sign said will at the time and place of execution, but by a trick or subterfuge W. B. Arnold procured the signature to said deed, and obtained witnesses thereto without their having seen Mrs. Arnold sign it, and the witnesses were tricked and defrauded into affixing their signatures. Prayers were for cancellation of the deed. In response to demurrers, the petitioners alleged that the estate of B. C. Arnold consisted of about $20,000; that W. B. Arnold bought cotton, resulting in a loss of $6000; that Mrs. Arnold was sick, feeble, and weak, and in such mental state that she was unable to recognize her own family; that W. B. Arnold was in a constant state of drunkenness; that he gradually got control of the entire estate of B. C. Arnold except $2800, and all of her property; that she was completely under his domination; that he misused and dissipated the B. C. Arnold estate; that his obtaining the deed was in order to get control of all his mother's property to the exclusion of the other heirs; and that she was not able at the time to sign a deed or to understand what disposition she was making of her property.

The defendant, W. B. Arnold, denied all the material allegation of the petition. He died, and C. J. Arnold, his executor, was made a party. On the trial the witnesses to the will stated that they remembered signing it as witnesses, but no one of them could recall signing the deed in question, or any other paper, nor could they say about the date. Other witnesses testified that W. B. Arnold would not allow the other heirs to talk to his mother about

business matters; that he took entire charge of the estate of B. C. Arnold and of his mother; that on one occasion he took his mother to Florida, and on the return trip stopped at the home of C. S. Arnold in Augusta, arriving there late at night; that he left the next morning with his mother between three and four o'clock; that he had dissipated the estate of B. C. Arnold, and had procured from his mother the deed already mentioned, which was not placed on record until after her death. W. B. Arnold testified as follows: "This deed and this will were not executed on exactly the same day. They were signed the same day; I am positive about that. When I went up to Dr. Wills' office, I told him my mother wanted him to witness a couple of papers; I say I have a will and a deed. I don't remember whether I told Mr. Barksdale that I had two papers. The date is on there when I had this will drawn. I had it drawn November —, 1930. I did not bring my mother to Washington until January 2, 1931. I carried the papers out there. The will was drawn in Mr. Slaton's office. My mother was not there at the time. I told him how to draw the will. The deed was drawn in Mr. Slaton's office. I told him what to put in the deed. I carried written instructions. I just made a notation. It was my writing. My mother never wrote Mr. Slaton anything. I brought Mr. Slaton instructions in my writing; it was a memorandum I wanted to keep. I took them out there. The boundaries were not right in one. I don't know when the deed was drawn. I could not say whether it was drawn the same day the will was signed. I do say that my mother signed both of them at the same time." Dr. C. E. Wills testified: "Mrs. Arnold was a very aged lady. She was feeble. . . At times she was in a state of coma. I don't think she was very clear. . . In my opinion, I think Mrs. Arnold had sufficient mentality to know what property she had and what her relation was with reference to the various members of her family."

The jury found, in favor of the plaintiffs, that the deed be set aside. A motion for new trial was overruled, and the defendant excepted.

■ In the motion for new trial error is assigned upon the admission, over objection, of the following testimony of Mrs. Dempie Blackmon: "Q. From the condition in which you saw your mother, her age and feebleness, without regard to any transactions

or communications you had with her, would you say whether or not, about the second·day of January, 1931, that she was in mental condition to understand the making of a deed? A. I would say certainly not." Independent physical facts which do not involve communications or transactions with a deceased person are admissible in evidence. *Nugent* v. *Watkins*, 129 *Ga.* 382 (58 S. E. 888). "To give an opinion based on facts is not just such testimony as to transactions or communications had with the deceased as should be excluded under section 5269 of the Civil Code" of 1895. *Cato* v. *Hunt*, 112 *Ga.* 139 (37 S. E. 183). As was stated in *Chamblee* v. *Pirkle*, 101 *Ga.* 790, 792 (29 S. E. 20), "a transaction or communication with a deceased person, as used in the section cited, means, we think, some transaction or communication had directly with the deceased, something personal between the surviving and the deceased parties, a transaction or communication of such character that the deceased, if alive, could deny, rebut, or explain the statement of the other party." The testimony quoted above was properly admitted.

■ Another ground assigns error on the overruling of a motion to dismiss the petition on the ground that it was prematurely brought. There is no merit in this contention. The Code of 1933, § 113-907 provides: "Upon the appointment of an administrator, the right to the possession of the whole estate is in him, and, as long as such administrator continues, the right to recover possession of the estate from third persons is solely in him. If there is no administration, or if the administrator appointed consents thereto, the heirs at law may take possession of the lands, or may sue therefor in their own right." The evidence shows that the will of Mrs. Sarah F. Arnold was denied probate in solemn form, and a temporary administrator was appointed. A temporary administrator is custodian of the estate, and his powers are strictly limited by statute. He can not sue for realty: *Collins* v. *Henry*, 155 *Ga.* 886, 892 (118 S. E. 729); *Irvine* v. *Wiley*, 145 *Ga.* 867 (90 S. E. 69). The evidence shows that the petitioners were authorized to bring the suit.

■ Error is assigned on the following charge by the court to the jury: "The question of undue influence is another issue in this case. . . I charge you, gentlemen, that the undue influence referred to must be what the law regards as undue influence; such

influence that is obtained by flattery, importunity, superiority of will, mind, or character, which would give dominion over the will to such an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse. Such is the kind of influence which the law condemns as undue. Gentlemen, I charge you that if you should believe under the evidence, facts and circumstances of this case, that Mr. W. B. Arnold used such influence as defined to you over his mother, Mrs. Sarah F. Arnold, in getting her to execute this deed, why then, in that event, I charge you that it would be your duty to find in favor of the plaintiffs on that issue." Undue influence is usually hard to prove. It may always be shown by circumstances. According to the testimony of W. B. Arnold, the will and deed were not executed on the same day. He then said: "They were signed the same day; I am positive of that." He had obtained a power of attorney from his mother, he had speculated in cotton and had lost heavily, and his entire course of conduct as shown was sufficient to authorize the charge complained of. "Fraud and undue influence can rarely be established by direct proof. Accordingly, both may be proved by indirect evidence and by proof of facts from which they may be inferred. The presumption is strong against a party preparing a will who takes a benefit under it; and although it will not be declared void on that account, strong evidence of intention in such a case will be required." *Davis* v. *Frederick,* 155 *Ga.* 809, 817 (118 S. E. 206).

Error is assigned also on the following charge of the court: "One of the issues in this case is that the deed sought to be set aside was procured as a means of concealing his alleged fraudulent conduct in dealing with the assets of the estate of B. C. Arnold and Mrs. Sarah .F. Arnold. I charge you that it makes no difference whatever what the conduct of Will B. Arnold was or whether or not he was guilty of fraud, unless the fraud charged and sought to be proved was a fraud which entered into the execution of this deed. You would only be authorized to consider the charge of fraud as a thing which affected this deed. That is entirely a question for you to decide under the evidence, facts and circumstances of the case, as to whether or not Mr. W. B. Arnold was guilty of fraud, and as to whether or not that fraud went into the execution of this deed, that being entirely a question for you; and

if you should find that he did not use any fraud which went into the execution of this deed, why then and in that event I charge you on that issue you would find in favor of Mr. W. B. Arnold. On the other hand, if you should believe under the evidence, facts and circumstances of this case, that he was guilty of fraudulent conduct in dealing with the assets of those estates, and that it went into the execution of this deed, I charge you that it would be your duty to find on that issue in favor of the plaintiffs." "Slight evidence of fraud and undue influence may authorize the jury to cancel the deed, and is sufficient to shift the burden to the defendant (the grantee) and require him to show that the transaction was fair and free from fraud and undue influence." *Hubbard* v. *Rutherford*, 148 Ga. 238 (4) (96 S. E. 327). Undue influence may be shown by circumstantial evidence as well as by direct evidence, and slight evidence of fraud and undue influence may authorize the jury to cancel the deed. *Elliott* v. *Gary*, 153 *Ga.* 665 (4) (112 S. E. 900). The question of mental capacity to make the deed in question was made a direct issue in the case, and the court properly charged the jury upon this feature. *Smith* v. *McClure*, 151 *Ga.* 484 (107 S. E. 330).

■ Error is assigned upon the following charge: "I call your attention to another issue which has been suggested, in which plaintiffs contend that this deed was signed by means of an artifice or trickery practiced upon Mrs. Arnold by W. B. Arnold, that she had no knowledge that she was signing a deed, and that in that way a fraud was perpetrated upon Mrs. Arnold in having her to execute the deed. That is entirely a question for you to determine under all the evidence, facts and circumstances of the case, as to whether or not any artifice or trickery was practiced upon Mrs. Arnold by W. B. Arnold in securing her to sign this deed or in getting her signature to the deed; and I charge you that if you believe under the evidence, facts and circumstances of this case, that Mr. W. B. Arnold did use such methods to obtain the deed in question from his mother, why I charge you on that issue it would be your duty to find in favor of the plaintiffs and against the defendant, unless you should further find that the deed was ratified by Mrs. Arnold." The principles involved in this excerpt from the charge have been discussed in the previous divisions of this opinion, and need no

further elaboration. The charge stated correct principles of law, and was not erroneous for any reason assigned.

The evidence was sufficient to authorize the verdict.

*Judgment affirmed. All the Justices concur, except Atkinson, J., who dissents. Gilbert, J., concurs in the result.*