JONES *et al.* v. SMITH *et al.*

HAWKINS, Justice. The plaintiffs, as heirs at law of J. U. Tippins Sr., deceased, sought the cancellation of an option made by the decedent in his lifetime to his son, J. U. Tippins Jr., who transferred or assigned it for value to the defendant, H. P. Smith, upon the grounds of mental incapacity of the optionor, undue influence, and inadequacy of price;

and sought certain injunctive relief to prevent the exercise of the option and conveyance, by the administrator of the estate of J. U. Tippins Sr., of the property covered thereby. The defendant Smith in his answer prayed for specific performance of the option. The trial court directed a verdict for the defendants, and in favor of the defendant Smith for the specific performance of the option, and entered a decree accordingly. The plaintiffs duly presented their motion for a new trial, which was amended, and to the judgment overruling the amended motion for a new trial they excepted. *Held*:

1. "An option is a contract by which the owner of property agrees with another that the latter shall have the right to buy the owner's property at a fixed price, within a certain time, and on agreed terms and conditions. *Black* v. *Maddox*, 104 *Ga.* 157; 162 (30 S. E. 723); *Hughes* v. *Holliday*, 149 *Ga.* 147 (99 S. E. 301)." *Mattox* v. *West*, 194 *Ga.* 310, 314 (21 S. E. 2d, 428).

2. While a subsequent agreement by the optionor to extend the time within which the option may be exercised, whether made before or after the time limited for the exercise of the original option, must be supported by a valuable consideration, as such an agreement is in effect a new option (*Broadwell* v. *Smith*, 152 *Ga.* 161 (2) 108 S. E. 609), the fact that the consideration named in the extension had not been paid would not necessarily defeat the option contract or render it less enforceable. *Blount* v. *Lynch*, 24 *Ga. App.* 217 (100 S. E. 644); *Cobb* v. *Jolley*, 26 *Ga. App.* 123 (105 S. E. 630); *Mattox* v. *West*, 194 *Ga.* 310, 315 (21 S. E. 2d, 428). "Where a contract contains a recital of the payment of one dollar as its consideration, the contract is valid though the sum named was not actually paid. It creates an obligation to pay that sum, which can be enforced by the other party." *Southern Bell Telephone &c. Co.* v. *Harris*, 117 *Ga.* 1001 (2) (44 S. E. 885); *Nathans* v. *Arkwright*, 66 *Ga.* 179, 180.

3. Under the foregoing rulings, the written extensions of the option in this case, reciting a consideration of one dollar, receipt of which was acknowledged, cannot be held to be invalid because without consideration, although the sum named may not have been actually paid.

4. The provisions of the Code, § 38-1603 (1), to the effect that the opposite party in a suit defended by an indorsee, assignee, transferee, or the personal representative of a deceased person shall not be permitted to testify in his own favor against the deceased person as to transactions or communications with such deceased persons, do not render such opposite party incompetent as a witness to give an opinion as to the mental capacity of such deceased person, based upon associations and opportunities for observation by such witness while in the home and in the presence of the deceased person. Such an opinion is not such testimony as to transactions or communications had with the deceased as should be excluded under the Code section above referred to. *Cato* v. *Hunt*, 112 *Ga.* 139 (37 S. E. 183); *Arnold* v. *Freeman*, 181 *Ga.* 654, 657 (183 S. E. 811); *Myers* v. *Phillips*, 197 *Ga.* 536 (29 S. E. 2d, 700); *Watkins* v. *Stulb & Vorhauer*, 23 *Ga. App.* 181, 183 (8) (98 S. E. 94). Accordingly, the trial court erred in excluding the testimony of the plaintiff, Mrs. Louise Jones—that "My father was out

of his mind in the Metter Hospital and he did not know what he was talking about. Around his home, many times after he came home from the hospital, I found him out of his mind. He would not even know when he was at home or how to get back home. These occurrences took place in the last 30 to 60 days of his life"—on the following objection by counsel for the defendants: "We object to the testimony of this witness, since she is a party to the case, and the action is brought against the assignee of the deceased, and under the rule the opposite party is not permitted to testify as to transactions with the deceased."

5. The rulings complained of in grounds 3 and 4 of the amended motion for a new trial show no reversible error. It appears from the record that Mrs. Louise Jones did testify that the reason she had raised no objection to her brother having the option was, "We had an understanding as to whether or not the option would be exercised," which is substantially to the same effect as the evidence alleged to have been excluded in the 3rd ground of the amended motion. The 4th ground of the amended motion is not complete, in that it does not disclose the objection urged and upon which the testimony therein referred to was excluded by the trial court; but regardless of the objection, a statement by this witness, that "It was the general opinion of the family that this option would never be exercised," was purely a conclusion of the witness and was not admissible.

6. "Value can not be established by proof that the owner of the property or his agent was offered a certain price therefor at a time and upon an occasion entirely disassociated from the transaction under consideration." *Groover* v. *Simmons*, 161 *Ga.* 93, 94 (6) (129 S. E. 778). "In the investigation of the value of property it is not error to exclude evidence as to what the owner would be willing to take for it." *Conant* v. *Jones*, 120 *Ga.* 568 (5) (48 S. E. 234). *In Richardson* v. *John Hancock Mutual Life Ins. Co.*, 167 *Ga.* 340 (145 S. E. 448), it was held that, where the question of the value of property is involved, it is error to permit a witness to testify what he would have been willing to pay for the property.

(a) Under the foregoing principles, it was error for the trial court in the instant case to admit the testimony of the witnesses, set out in the 5th ground of the amended motion for a new trial, as to the price which the owner of the land in question had offered to take for it at some time prior to his death, over the objection then and there urged, "what the deceased offered at some time prior to his death to sell this land for, is not the method and standard for proving market value."

7. While the Code, § 38-1605, provides: "No attorney shall be competent or compellable to testify, for or against his client, to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relations as attorney, or by reason of the anticipated employment of him as attorney, but shall be both competent and compellable to testify, for or against his client, as to any matter or thing, knowledge of which he may have acquired in any other manner," and while under the provisions of the Code, §§ 38-418 (2) and 38-419, communications between attorney and client are privileged, these pro-

visions have no application to the competency of an attorney as a witness with respect to essential facts attending the execution of a contract in the preparation and as to the attestation of which he rendered professional service. In such a matter the attorney is not testifying "for or against his client." An attorney at law who witnesses a contract as a subscribing witness, and who was employed to prepare the same, is competent, in a trial involving the mental capacity of the maker thereof to execute a valid contract, to testify as a witness concerning the maker's mental condition; also as to facts showing the latter's knowledge, or ignorance, of the contents of the paper, and as to all other pertinent facts attending the signing and attestation of the instrument. *O'Brien* v. *Spalding,* 102 *Ga.* 490 (31 S. E. 100); *Waters* v. *Wells,* 155 *Ga.* 439 (6) 446 (117 S. E. 322); *Manley* v. *Combs,* 197 *Ga.* 768 (8-a) (30 S. E. 2d, 485). Accordingly, the trial court did not err in admitting the testimony of the attorney who prepared and witnessed the last extension of the option contract here involved, as to his opinion of the mental capacity of the maker of the option at that time, and the instructions from and conversation of the maker, and the other facts and circumstances surrounding the execution thereof, as complained of in the 6th ground of the amended motion for a new trial.

8. The law presumes every man to be sane until there is evidence to the contrary, and the burden is on the party attacking a contract to show the incompetency of the signer at the time of the execution thereof, and proof of temporary lapse of sanity, or insanity of a temporary character, at a previous time would create no presumption that it continued up to the time of the execution of a contract. *Community Loan and Investment Corp.* v. *Bowden,* 64 *Ga. App.* 175 (12 S. E. 2d, 421); *Dicken* v. *Johnson,* 7 *Ga.* 484 (2).

(*a*) In order to void a contract on the ground of mental incapacity of the maker, he must have been *non compos mentis,* that is, entirely without understanding, at the time the contract was executed. *Thomas* v. *Lockwood,* 198 *Ga.* 437 (31 S. E. 2d, 791).

(*b*) In the instant case, taking the evidence most favorable to the contentions of the plaintiffs, it shows that the maker of the option was 83 years of age and in very feeble health; that he was childish, forgetful, unable to remember events and persons, generally afflicted with the infirmities that accompany old age, and at times suffered from uremic poisoning, and that during such times his mental condition was bad, but, when this uremic poisoning was cleared up, his mental condition improved. The only direct and positive testimony as to the mental condition of the optionor at the time of the execution of the last extension of the option was that of the attorney who prepared and witnessed it, which was that the maker "was as clear that day as he ever was in my office. He told me exactly what he wanted done and I had no doubt but that he knew what he was doing. That day I would not consider him sick, and did not hear that he went from my office home and immediately went to bed. I know that he was feeble physically and had been slipping physically for several months, but he had been in my office often since 1914, and on the day that

this paper was fixed, I think his mind was as bright as it was thirty years ago. I practice law here in Reidsville." J. U. Tippens Jr. was present at the time testified to by this attorney, and, although sworn as a witness in behalf of the plaintiffs, did not testify that his father was mentally incapable of making a valid contract at that time; but, on the contrary, testified that he considered the option and the extension thereof valid. The evidence was, therefore, insufficient to show mental incapacity on the part of the maker of the option, and the trial court did not err in directing a verdict for the defendants as related to that issue of the case. *Bailey* v. *Bailey,* 204 *Ga.* 556 (50 S. E. 2d, 617); *Espy* v. *Preston,* 199 *Ga.* 608 (34 S. E. 2d, 705).

9. "Where a contract for the sale of land is in writing, is certain, and fair in all its parts, is for an adequate consideration, and capable of being performed, it is just as much a matter of course for a court of equity to decree a specific performance of it as it is for a court of law to give damages for it in other cases." *Chance* v. *Beall,* 20 *Ga.* 142; *Clark* v. *Cagle,* 141 *Ga.* 703 (82 S. E. 21); *Redmond* v. *Sinclair Refining Co.,* 204 *Ga.* 699 (51 S. E. 2d, 409). And, while "inadequacy of price is no ground for rescission of a contract of sale, unless it is so gross as combined with other circumstances to amount to fraud" (Code, § 96-105), "mere inadequacy of price, though not sufficient to rescind a contract, may justify a court in refusing to decree a specific performance; so also any other fact showing the contract to be unfair, or unjust, or against good conscience." Code, § 37-805. "Specific performance is not a remedy which either party can demand as a matter of absolute right, and will not in any given case be granted unless strictly equitable and just. Mere inadequacy of price may justify a court in refusing to decree a specific performance of a contract of bargain and sale; so also may any other fact showing the contract to be unfair, or unjust, or against good conscience." *Shropshire* v. *Rainey,* 150 *Ga.* 566 (2) (104 S. E. 414); *Potts* v. *Mathis,* 147 *Ga.* 495 (94 S. E. 767), s. c., 149 *Ga.* 367 (100 S. E. 110); *Huggins* v. *Meriweather,* 177 *Ga.* 461 (170 S. E. 483); *Bullard* v. *Bullard,* 202 *Ga.* 769 (1) (44 S. E. 2d, 770).

10. The evidence in this case as to the adequacy of the purchase-price of the lands involved, as fixed by the option contract, was in direct conflict, some of the witnesses for the plaintiffs testifying that its market value was as much as $90,000, and those for the defendants testifying that the purchase-price of $30,000, specified by the option, was adequate. There was much evidence as to the nature and character of the lands, the improvements thereon, and the acreage thereof. Questions of value are peculiarly for determination of the jury where there is any data in evidence on which they may legitimately exercise their own knowledge and ideas. *Brown* v. *Eaton-Saussy & Co.,* 42 *Ga. App.* 486 (156 S. E. 459). "It is error for the judge to direct a verdict, except where there is no conflict in the evidence as to the material facts, and the evidence introduced, together with all reasonable deductions or inferences therefrom demands a particular verdict." *Shaw* v. *Probasco,* 139 *Ga.* 481 (1) (77 S. E. 577); *Dixon* v. *Bristol Savings Bank,* 102 *Ga.* 461, 468 (31 S. E. 96); Code, § 110-104. The trial court erred in direct-

ing a verdict in favor of the defendant for the specific performance of the option contract.

*Judgment reversed. All the Justices concur.*

No. 16858. NOVEMBER 15, 1949.

*M. W. Eason* and *Joseph T. Grice,* for plaintiffs.

*D. L. Stanfield, C. L. Cowart,* and *T. Ross Sharpe,* for defendants.