23685. SMITH, Administrator v. SMITH.

ARGUED SEPTEMBER 13, 1966—DECIDED NOVEMBER 10, 1966.

*Jack J. Helms, Larry E. Pedrick,* for appellant.

*Vickers Neugent, Robert Sumner, Sumner & Boatright,* for appellee.

COOK, Justice. Henry Smith, as administrator of the estate of Manning G. Smith, deceased, brought a petition against Roscoe Smith seeking to set aside a deed executed by the intestate to the defendant. The petition alleged that the intestate was 79 years of age at the time the deed was executed, and was physically and mentally ill to the extent that he did not have mental capacity to execute a deed. The jury found a verdict for the defendant, and the appeal is from the judgment entered on this verdict, and the judgments denying the petitioner's motion for new trial and motion for judgment notwithstanding the verdict. The appellant made twelve assignments of error in his enumeration of errors.

■ The first assignment of error is that the trial judge erred in denying the appellant's motion for a directed verdict, and subsequently denying his motion for judgment notwithstanding the verdict. These contentions are based on the introduction in evidence of a judgment by the ordinary finding Manning G. Smith incompetent on January 15, 1960, prior to the execution of the deed on February 16, 1961. The judgment shows that it was set aside on April 16, 1960, and the defendant introduced in evidence the proceedings and the judgment setting aside the judgment of incompetency. The judgment of the ordinary finding Manning G. Smith mentally incompetent did not require the direction of a verdict in favor of the appellant since this adjudication was set aside and nullified.

In Assignment 5 error is alleged because the judge allowed in evidence the proceedings and order setting aside the adjudication of mental incompetency. This assignment is clearly without merit.

In Assignment 12 it is contended that the trial judge erred in refusing to charge as follows: "Under the doctrine of presumption of continuity, when status such as mental incompetence is proved to have existed, it is presumed to have continued to exist, and in this connection I charge you that a deed executed by a person previously adjudicated insane by a court of competent jurisdiction is absolutely void." This charge was not required by the evidence, since the only adjudication of insanity introduced in evidence showed on its face that it had been set aside.

■ The errors enumerated as Nos. 2, 3, 4, and 10 all relate to the competency of witnesses to testify as to transactions with the deceased grantor in the deed sought to be set aside, under the provisions of *Code* § 38-1603 (1, 4). The first division of this Code section provides that where any suit "shall be instituted or defended by . . . an indorsee, assignee, or transferee, or the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the . . . deceased person as to transactions or communications with such . . . deceased person whether such transactions or communications were had by such . . . de-

ceased person with the party testifying or with any other person." Division 4 of the Code section makes a witness interested in the result of the suit incompetent under the same rule.

The second specification of error is the refusal to allow the appellant to testify as to the value of the property involved and as to transactions between him and the deceased intestate. The judge correctly ruled that the appellant could not testify in his own favor as to transactions between him and the deceased, since the action was defended by the "assignee, or transferee" of the deceased. *Turner v. Woodward*, 136 Ga. 275 (71 SE 418).

This rule would not make the appellant incompetent to testify in regard to the value of the land, since it is only "transactions or communications" with the deceased which are excluded. *Holmes v. Maddox*, 175 Ga. 365, 375 (165 SE 92). This ruling, however, was not harmful to the appellant under the allegations of the petition. The deed was alleged to be invalid because of the mental incompetency of the maker, and the question of the value of the property conveyed was not material to the issue on trial. The judge also stated that he would not allow the witness to testify as to the rental value of the property. The amendment to the petition praying for mesne profits was not filed until after the completion of the trial, and no issue in regard to rental value had been made at the time this witness testified.

■ In Specifications 3 and 4 error is asserted because the judge refused to allow Mrs. Woodrow Stone and Mrs. Betty Smith Morgan to testify as to transactions with their deceased father, and as to his mental condition. Counsel for the appellant stated that the testimony they would give would be in support of the petition. These witnesses were not parties to the action, but were heirs at law of the deceased intestate, and would be interested in the result of the action. They were therefore incompetent to testify in their own favor as to transactions with the deceased.

These witnesses were not incompetent to testify as to the mental condition of the deceased. In *Jones v. Smith*, 206 Ga. 162 (4) (56 SE2d 462), it was held: "The provisions of the

*Code,* § 38-1603 (1), to the effect that the opposite party in a suit defended by an indorsee, assignee, transferee, or the personal representative of a deceased person shall not be permitted to testify in his own favor against the deceased person as to transactions or communications with such deceased persons, do not render such opposite party incompetent as a witness to give an opinion as to the mental capacity of such deceased person, based upon associations and opportunities for observation by such witness while in the home and in the presence of the deceased person. Such an opinion is not such testimony as to transactions or communications had with the deceased as should be excluded under the Code section above referred to. *Cato v. Hunt,* 112 Ga. 139 (37 SE 183); *Arnold v. Freeman,* 181 Ga. 654, 657 (183 SE 811); *Myers v. Phillips,* 197 Ga. 536 (29 SE2d 700); *Watkins v. Stulb & Vorhauer,* 23 Ga. App. 181, 183 (8) (98 SE 94)."

It was error to refuse to allow Mrs. Woodrow Stone and Mrs. Morgan to testify as to the mental condition of the deceased intestate.

■ In Specification 10 it is asserted that the trial judge erred in allowing the testimony of Daisy Stone, a witness for the defendant, as to transactions she had with the deceased intestate. The testimony of this witness, who was not a party to the case, was not in her "own favor" and it was not error to admit it.

■ Specifications 6 and 9 assign error on the admission of evidence of H. J. Quincey and Vickers Neugent, both attorneys, because of the confidential relationship between these attorneys and the intestate.

*Code Ann.* § 38-418 provides that certain admissions and communications are excluded from considerations of public policy, among those being communications between "attorney or counsel and client." *Code* § 38-419 provides: "Communications to any attorney, or his clerk, to be transmitted to the attorney pending his employment, or in anticipation thereof, shall never be heard by the court. So the attorney shall not disclose the advice or counsel he may give to his client, nor produce or deliver up title deeds or other papers, except evidences of debt left in his possession by his client. This rule shall not exclude

the attorney as a witness to any facts which may transpire in connection with his employment." *Code* § 38-1605 provides: "No attorney shall be competent or compellable to testify, for or against his client, to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relations as attorney, or by reason of the anticipated employment of him as attorney, but shall be both competent and compellable to testify, for or against his client, as to any matter or thing, knowledge of which he may have acquired in any other manner." The rule making an attorney incompetent to testify for or against his client continues after the client's death. *Neal v. Patten*, 47 Ga. 73 (3).

H. J. Quincey was questioned in regard to the fact of his representation of the deceased in litigation. He then testified as follows: "Q. Mr. Quincey, did he carry on a conversation with you on the occasion he went to your office? A. Yes, and on subsequent occasions. Q. I'll ask you if you formed an opinion as to his mental condition based upon your association and observation of him and the conferences which you had with him in your office. A. Yes, I did. Q. And state what that opinion was. A. I thought he was sane."

The fact of an attorney's employment is properly admitted in evidence. *Fowler v. Sheridan*, 157 Ga. 271, 275 (121 SE 308). This witness did not testify as to any communications with his deceased client. His only testimony relevant to the issue on trial was his opinion in regard to the mental capacity of his deceased client, based on his observations of his client in the conferences he had with the client. This testimony does not come within the rule prohibiting an attorney from testifying, for or against his client, as "to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relations as attorney." *Code* § 38-1605.

■ The testimony of Vickers Neugent, all of which was admitted over the objection that it was incompetent because of the attorney-client relationship, was extensive. He first testified in regard to representing the deceased in setting aside the judgment of mental incompetency. He then detailed his representation of the deceased thereafter in reference to the sale of

some timber by the deceased. He explained the division of the proceeds of the timber sale among the children of the deceased, and related declarations of the deceased to him in connection with this transaction. This testimony was clearly inadmissible under *Code* §§ 38-418, 38-419, and 38-1605.

■ The testimony of the attorney Neugent, in regard to the execution of the deed sought to be set aside in the present action was admissible. The attorney had prepared this deed and was the official witness to its execution. In *Jones v. Smith,* 206 Ga. 162 (7), supra, it was held that the provisions of *Code* § 38-1605 "have no application to the competency of an attorney as a witness with respect to essential facts attending the execution of a contract in the preparation and as to the attestation of which he rendered professional service. In such a matter the attorney is not testifying 'for or against his client.' An attorney at law who witnesses a contract as a subscribing witness, and who was employed to prepare the same, is competent, in a trial involving the mental capacity of the maker thereof to execute a valid contract, to testify as a witness concerning the maker's mental condition; also as to facts showing the latter's knowledge, or ignorance, of the contents of the paper, and as to all other pertinent facts attending the signing and attestation of the instrument. *O'Brien v. Spalding,* 102 Ga. 490 (31 SE 100); *Waters v. Wells,* 155 Ga. 439 (6), 446 (117 SE 322); *Manley v. Combs,* 197 Ga. 768 (8a) (30 SE2d 485)."

■ The seventh specification of error complains of the admission in evidence of certain tax returns purportedly signed by the intestate by his mark, over the objection that there was no evidence that the intestate signed them. These tax returns were properly identified as true copies of the returns filed in the office of the Tax Commissioner of Atkinson County, and were admissible for whatever evidentiary value they might have.

■ The eighth specification of error asserts that it was error for the judge to excuse a witness for the appellee. It is contended that this deprived the appellant of his right to recall this witness at a later time for further cross examination. It is not shown that this was harmful to the appellant, since it does not appear that he sought to recall the witness and was denied this right.

█ Error is asserted in Specification 11 on an excerpt from the charge of the court, concluded by the following sentence: "The final test as to mental capacity is necessarily confined to the condition of the grantor, Manning G. Smith's mind at the time the deed was executed." It is conceded that the excerpt is correct as an abstract principle of law, but it is asserted that it was misleading to the jury in that it would cause them to believe that the burden was on the appellant to prove by direct evidence that the grantor in the deed was non compos mentis at the very moment the deed was executed, notwithstanding the evidence of his mental incompetence before and after the execution of the deed.

In *Pantone v. Pantone*, 206 Ga. 305, 311 (57 SE2d 77), this court held: "The issue as to contractual capacity is to be determined by the condition of the grantor's mind at the time the deed was executed [authorities]; but, in determining such an issue, it is permissible to receive and consider evidence as to the state of the grantor's mind for a reasonable period both before and after the transaction under investigation; . . ." See also *Kesler v. Kesler*, 219 Ga. 592 (2) (134 SE2d 811). It was pointed out in *Thomas v. Lockwood*, 198 Ga. 437, 446 (31 SE2d 791), that: "The two rules are entirely consistent, and neither of them should be overlooked; the former referring to the ultimate fact, the latter to facts that are evidentiary only."

The charge given in the present case was correct, and if the appellant desired instructions to the jury as to the evidence which they could consider in arriving at the ultimate question for decision, the condition of the grantor's mind at the time of the execution of the deed, proper request should have been made for such instructions.

█ Because of errors previously indicated, occurring during the trial, the case must be remanded for another trial.

*Judgment reversed. All the Justices concur.*