### A97A2153. COTTON v. BANK SOUTH.
(499 SE2d 129)

RUFFIN, Judge.

Bank South sued Marjorie Cotton for the balance due on a promissory note that Cotton executed in connection with a motor vehicle purchase agreement. Cotton appeals from the trial court's order granting summary judgment to Bank South. For the following reasons, we affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). " 'The movant has the original burden of making this showing. Once the movant has made a prima facie showing that it is entitled to judgment as a matter of law, the burden shifts to the respondent to come forward with rebuttal evidence.' [Cit.]" *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 393 (2) (469 SE2d 469) (1996). In rebutting this prima facie case, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [OCGA § 9-11-56], must set forth specific facts showing that there is a genuine issue for trial." OCGA § 9-11-56 (e); see also *Lau's Corp.*, supra. On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993).

Viewed in the light most favorable to Cotton, the record shows that on January 10, 1994, Cotton purchased a used 1993 Mitsubishi Mirage from Phil Hughes Honda ("the dealership"). During the sales transaction, the dealership's salesman represented to Cotton that the vehicle had never been wrecked. Cotton executed a sales contract and a promissory note in connection with the purchase of the vehicle. The sales contract contained a merger clause providing that the contract

constituted the entire agreement between the parties. The dealership subsequently assigned the promissory note to Bank South.

On October 17, 1994, approximately nine months after Cotton purchased the vehicle, its interior became filled with water. Cotton learned that prior to her purchase of the car it had been severely damaged in an automobile collision and that this damage allowed the water to leak into the vehicle. In a letter dated October 24, 1994, Cotton contacted Bank South to inform it of the vehicle's damaged condition and her potential claim against the dealership for misrepresenting that it had not been previously wrecked. Cotton also informed Bank South that she "[would] not be making any further payments on this account because of her claim/defense against the dealer." Although Cotton inquired about Bank South's willingness to finance another car purchase, she did not mention returning the vehicle. In her affidavit, Cotton stated that Bank South offered to resolve the matter if she returned the vehicle in exchange for its excusing the debt. However, Cotton declined the offer because the settlement would have resulted in a loss of the value of her trade-in. Later, Cotton informed Bank South that "if your bank will refund all payments heretofore made to you by Mrs. Cotton, plus her down payment (including the value of her trade-in), we will return the vehicle to you and give you a pro tanto release which reserves the right to take legal action against the dealer."

Bank South later sued Cotton to collect the debt owed on the promissory note. Cotton answered and counterclaimed seeking monetary damages but not rescission of the sales contract. While attempting to resolve the matter, Cotton moved to Florida and requested Bank South transfer title of the car to her. Bank South complied with Cotton's request and she obtained a Florida certificate of title to the vehicle. She continued to use and maintain the car, putting approximately 20,000 miles on the vehicle from the date of purchase, January 10, 1994, to the date Florida title was received, April 8, 1996. Bank South moved for summary judgment, and Cotton subsequently dismissed her counterclaim and amended her answer to include a fraud defense and an attempted rescission of the sales contract by alluding to her letter of October 24, 1994. Cotton's amendment was filed approximately one year after Bank South filed its complaint. The trial court granted Bank South's motion for summary judgment.

On appeal, Cotton contends that summary judgment was inappropriate because her offer to return the vehicle establishes an attempt to rescind the contract and that rescission was made impossible by Bank South's refusal to accept this offer.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for breach; or (2) rescind the contract and sue in tort for fraud. [Cits.]" *Jones v.*

*Cartee*, 227 Ga. App. 401, 403 (489 SE2d 141) (1997). "Depending upon which of the two actions is ultimately pursued, the presence of a merger clause in the underlying contract may be determinative as to the successful outcome. If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract, and the merger clause will prevent his recovery. If, on the other hand, he does rescind the contract, the merger clause will not prevent his recovery under a tort theory." (Citations and punctuation omitted.) Id.

In *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 379 (436 SE2d 94) (1993), the plaintiff, a used car buyer, learned, after she purchased a car, that it was previously involved in a collision. She had discussions with the dealership concerning the possibility of returning the car, but was unable to resolve the dispute. The plaintiff continued to make monthly payments on the car, maintained the car, and drove it extensively for 40,000 miles. The plaintiff amended her complaint almost one year after filing a damage action against the dealership to attempt a rescission of the purchase agreement. We affirmed the trial court's order granting summary judgment to the dealership. Id. at 380.

In *Owens*, we determined that " '[w]here a party who is entitled to rescind a contract on ground of fraud or false representations, and who had full knowledge of the material circumstances on the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract.' [Cit.]" Id.

We concluded in *Owens* that the plaintiff did not rescind the contract by merely discussing the possibility of returning the car at issue or by her subsequent amendment of the complaint. As for the discussions with the dealership, we found that "even if this mere inquiry were considered to have manifested a present election to rescind the contract, [the plaintiff's] subsequent actions did not adhere to that 'rescission,' but instead indicated an affirmation of the contract." Id. at 379.

We reach the same conclusion in this case. The undisputed evidence shows that Cotton continued to drive the car approximately two years after her discussions with Bank South about possibly returning it. Moreover, Cotton requested, and Bank South agreed to allow her to obtain, title to the car after she moved to Florida. These

actions are consistent with her affirmation of the contract and could not in any manner be construed to constitute a rescission of the contract. See id.

Similarly, "[Cotton's] purported rescission in the amendment to her [answer] almost one year after filing [the original answer and counterclaim] was ineffectual. Rescission or attempted rescission is a condition precedent even to bringing an action seeking rescission. [Cit.]" Id.

Finally, because the undisputed evidence showed that Cotton affirmed the contract and that the agreement contained a merger clause, "she was estopped from asserting any reliance upon the alleged misrepresentation made prior to execution of the contract. [Cit.] Accordingly, the trial court properly granted summary judgment for [Bank South]." Id. at 380.

In view of our ruling on the issue of rescission, we need not address the remaining enumerations of error.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED MARCH 18, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998

*Peevy & Lancaster, Stephen H. Smith*, for appellant.
*King & Carragher, Joseph R. Carragher*, for appellee.