A04A0225. LIBERTY v. STORAGE TRUST PROPERTIES,
L.P. et al.
(600 SE2d 841)

MILLER, Judge.

James Liberty sued Storage Trust Properties, L.P. and Public Storage, Inc. (collectively "Public Storage") for breach of contract, fraud, and negligence in connection with the loss of his trailer stored on their property. This appeal arises from the trial court's grant of summary judgment to Public Storage and the trial court's grant of Public Storage's motion to dismiss Liberty's appeal. For reasons that follow, we reverse the order dismissing the appeal and affirm the grant of summary judgment.

The record shows that in November 1999, the parties entered into a written agreement in which Liberty rented an outside parking space at a storage facility. The agreement provided in a paragraph titled "Insurance" that Liberty would store his personal property at his sole risk, that insurance was Liberty's sole responsibility, and that Liberty understood Public Storage would not insure his personal property. On a separate page, Liberty initialed that he chose to "personally assume all risk of loss" as opposed to buying insurance through Public Storage or his own insurance agent. He also acknowledged that Public Storage was a commercial landlord renting space, not a warehouseman; that it was not responsible for any loss of his property; and that it did not provide insurance on his property for him.

The agreement further provided:

To the extent [Liberty] does not obtain insurance coverage for the full value of [Liberty's] personal property stored in or on the Premises, [Liberty] agrees [that he] will personally assume all risk of loss, including damage or loss by burglary, fire, vandalism or vermin.

In a paragraph titled "Limitation of Owner's Liability; Indemnity," the agreement provided:

Owner and Owner's Agents will have no responsibility to [Liberty] or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents' active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. . . . [Liberty] agrees that Owner's and Owner's Agents' total responsibility

for any Loss from any cause whatsoever will not exceed a total of $5,000.

Finally, the agreement contained the following paragraph titled "No Warranties; Entire Agreement":

Owner hereby disclaims any implied or express warranties, guarantees or representations of the nature, condition, safety or security of the Premises and the Property and [Liberty] hereby acknowledges, as provided in paragraph 1 above, that [Liberty] has inspected the Premises and the Property and hereby acknowledges and agrees that Owner does not represent or guarantee the safety or security of the Premises or the Property or of any personal property stored therein; and this Rental Agreement does not create any contractual obligation for Owner to increase or maintain such safety or security. This Rental Agreement sets forth the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements or understandings with respect thereto. With the exception of posted rules and regulations as noted in paragraph 12, there are no representations, warranties, or agreements by or between the parties which are not fully set forth herein and no representative of Owner or Owner's Agents is authorized to make any representations, warranties, or agreements other than as expressly set forth herein. This Rental Agreement may only be amended by a writing signed by the parties.

According to Liberty, he selected Public Storage because of the security it offered. Specifically, a manager told him that there were four cameras on the property, that everything was videotaped, and that they knew everyone who came in and out, as well as the time they entered and exited. The manager also told him that the property could be entered only with an access code and only during certain hours. Liberty also claims that he relied on these representations when deciding whether to purchase insurance.

In July 2001, Liberty discovered that the trailer he had stored on the defendants' property had been stolen. When he reported the missing trailer to Gina Porter, a manager, she knew nothing about it, and they called the police. When the police arrived, Porter gave them only two or three videotapes, and Liberty claims she stated, "we never change the tapes in the machines." Porter also gave the police a computer-generated report showing who entered and exited the gate. Liberty claims he also learned at this time that some people had access to the property 24 hours a day.

Porter testified that a computerized gate system required tenants to enter an access code to get in or out of the property. Some tenants, usually businesses with accounts, were given access codes that provided them with 24-hour access to the property. She further testified that there are four cameras on the property and that a single videotape records what each camera sees on a split screen. The tape is changed each day, and there are 15 tapes. After two weeks, a tape is reused and recorded over. She did not know how many hours the tape would record and believed it did not record an entire 24 hours because it had stopped recording each morning when she changed it. Porter acknowledged that a Public Storage operations manual stated, in pertinent part:

### General Security Measures

Public Storage has implemented the following security measures at all properties:

***

### Lock Stickers

Public Storage requires that every lock carry a lock identification sticker. A lock without a sticker may indicate tampering or a break-in.

### Lock Checks

Public Storage requires that you conduct lock checks twice daily to look for tampered lock stickers and other signs of burglary or possible entry.

### Insurance

As Public Storage is not liable for goods our tenants store, customers are required to either obtain insurance or assume all risk of loss. As a convenience, however, we do offer customers the opportunity to obtain insurance through Sedgwick . . . insurance brokers.

***

### Gate Camera

Gate cameras take a picture of each vehicle entering your property and may act as a potential deterrent to crime. . . . Some gate cameras have been replaced with a CCTV camera

focused on the gate which transmits gate activity to a time-lapse recorder kept in the property office.

Porter explained that lock checks were only done on indoor storage spaces. She testified that the outdoor parking spaces were virtually impossible to check because many tenants stored vehicles that they frequently moved in and out of the space, such as recreational vehicles, campers, and boats. She would look for any obvious damage when she drove through the outdoor spaces in a golf cart, but she did not try to determine whether a vehicle was present or absent each day because they were moved in and out so frequently.

Porter testified that she did not recall any other trailers being stolen from the property, even after Liberty's counsel showed her an uncertified copy of a police report detailing the theft of a vehicle stored on the property in January 2001.

Nine months after discovering his trailer was stolen, Liberty filed suit against Public Storage, asserting breach of contract (Count 1) and fraud (Count 2) claims. Liberty alleged that he relied on misrepresentations about security made by the defendants' agents when deciding to rent space from the defendants. In his prayer for relief, he sought damages in excess of $30,000 for his breach of contract and fraud claims, as well as $90,000 in punitive damages. Although Liberty asserted that "the Agreement is hereby rescinded" in the fraud count of his complaint, he did not assert a separate cause of action for rescission or seek rescission in his prayer for relief.

Public Storage moved for summary judgment based on the merger clause and the limitation of liability provisions in the contract. The trial court signed an order granting summary judgment to the defendants on February 18, 2003, but it was not filed or entered with the clerk's office until the following day at 2:08 p.m. Three hours before the order granting summary judgment was entered, Liberty amended his complaint to assert a cause of action sounding in negligence. Specifically, Liberty asserted Public Storage failed to follow its written procedures regarding inspection of property under their supervision for evidence of theft. Liberty also asserted they "failed to follow their procedures for recording and preserving of video tapes of surveillance of the Property, despite the disappearance of another trailer from the property in January of 2001." According to Liberty, this conduct amounted to reckless "supervision over Plaintiff's trailer and personal property." There is no indication in the record that Liberty or his counsel knew about the trial court's adverse ruling before he filed the amended complaint.

Public Storage subsequently filed a motion to strike Liberty's amended complaint and also moved, in the alternative, for summary

judgment. On May 1, 2003, the trial court granted summary judgment "as to the remaining count of the Amended Complaint," finding that the contract barred Liberty's suit for damages.

Liberty filed a notice of appeal from both summary judgment orders on May 29, 2003. Public Storage moved to dismiss the appeal on the grounds that the amended complaint was ineffective and that an appeal should have been filed within 30 days of the initial grant of summary judgment. The trial court granted Public Storage's motion to dismiss the appeal, finding

> [p]laintiff has a statutory duty to present the case in full at the motion for summary judgment.... Trying to play "timing" games with the Court and the Clerk's Office will not sustain this complaint. Plaintiff should have articulated this "new claim" before the Motion for Summary Judgment was heard. Since all of the facts and arguments were heard that are presented with this new claim, the Court finds this is simply a tactic to try and delay the inevitable result of this case. In hindsight, the Court should have dismissed the "amended complaint," but the Court in its discretion simply entered summary judgment on the amended count.

Liberty filed a timely notice of appeal from this order and "from every other appealable order and judgment of the Court in this case."

1. Liberty contends the trial court erred when it dismissed his appeal. We agree. "OCGA § 9-11-15 (a) allows amendment as a matter of right before entry of a pre-trial order or prior to the commencement of trial." (Citation omitted.) *W. M. Griffin Family Farms v. Northrup King & Co.*, 191 Ga. App. 304, 305 (381 SE2d 441) (1989). Thus, Liberty could properly amend his complaint before the trial court's order granting summary judgment was filed in the clerk's office. Id. See also OCGA § 9-11-58 (b) ("The filing with the clerk of a judgment, signed by the judge, constitutes the entry of the judgment, and, unless the court otherwise directs, no judgment shall be effective for any purpose until the entry of the same, as provided in this subsection."). As the new claim of negligence asserted in the amended complaint was not, and could not have been, addressed by the trial court in the order it signed the day before the amendment was filed, it remained pending and the trial court's first order granting summary judgment did not dispose of the entire case. Although this order was subject to a direct appeal by Liberty (see OCGA § 9-11-56 (h)), Liberty was not required to file an appeal at that time. See *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 243 (248 SE2d 641) (1978) (party against whom partial summary judgment is granted may appeal after the grant of partial summary judgment or after the entry of the

final judgment). As a result, we reverse the trial court's order dismissing Liberty's appeal.

2. Liberty contends the trial court erred by granting summary judgment on his fraud claim because the merger clause in the contract is without effect due to the fact that he promptly rescinded the contract.

> In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for breach; or (2) rescind the contract and sue in tort for fraud. Depending upon which of the two [courses of action] is ultimately pursued, the presence of a merger clause in the underlying contract may be determinative as to the successful outcome. If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract, and the merger clause will prevent his recovery. If, on the other hand, he does rescind the contract, the merger clause will not prevent his recovery under a tort theory.

(Citations and punctuation omitted.) *Cotton v. Bank South*, 231 Ga. App. 812, 813-814 (1) (499 SE2d 129) (1998). A merger clause prevents a recovery in contract because it "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement." (Citation and punctuation omitted.) *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 828 (2) (586 SE2d 726) (2003). As a result, where a contract contains a merger clause, a party cannot assert "they relied upon representations other than those contained in the contract." (Citation and punctuation omitted.) Id.

In this case, it is undisputed that the contract contained a merger clause. Thus, Liberty's fraud claim can survive summary judgment only if he promptly rescinded the contract.

> [W]here a party who is entitled to rescind a contract on ground of fraud or false representations, and who had full knowledge of the material circumstances on the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his

purpose and adhere to it. Otherwise, he can not avoid or rescind such contract.

(Citation and punctuation omitted.) *Cotton,* supra, 231 Ga. App. at 814 (1). Moreover, "[f]orfeitures of rights under valid legal contracts are not favored under the law. Our courts generally are quick to seize upon any waiver of a forfeiture, the rule being that the right to rescind for any breach must be asserted promptly, and a waiver of a breach or forfeiture can not be recalled." (Citations and punctuation omitted.) *John McDonald Pontiac-GMC Truck v. Klopper,* 205 Ga. App. 639, 641 (422 SE2d 925) (1992). Finally, it is well settled that one who seeks the rescission of a contract on the ground of fraud must "restore, or offer to restore, the consideration received, *as a condition precedent to bringing the action. . . .*" (Citation and punctuation omitted; emphasis in original.) *Nexus Services v. Manning Tronics,* 201 Ga. App. 255, 256 (2) (410 SE2d 810) (1991).

Liberty contends the issue of prompt rescission is not properly before this court because defendants are making "a totally new argument, not raised in the Trial Court below." See *Pfeiffer v. Ga. Dept. of Transp.,* 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal") (footnotes omitted). The record, however, shows that defense counsel argued that Liberty failed to promptly rescind the contract in the summary judgment motion hearing. As a result, we find no merit in Liberty's request that we disregard the issue of prompt rescission. We also remind appellant's counsel of his duty to provide an "accurate statement of the proceedings" in his brief to this Court. Court of Appeals Rule 27 (a) (1). See also Georgia Rule of Professional Conduct 3.3 (a) (1) ("lawyer shall not knowingly . . . make a false statement of material fact . . . to a tribunal").

Having rejected Liberty's attempt to avoid the issue of prompt rescission, we now turn to the record, which shows that Liberty did not seek to rescind the contract until he filed his complaint. Although Liberty alleged he was "hereby" rescinding the contract in his complaint, he also asserted a separate cause of action for breach of contract. By seeking damages for breach of contract in his complaint, Liberty took action "inconsistent with a repudiation of the transaction" and lost his right to rescind the contract. *Cotton,* supra, 231 Ga. App. at 814-815 (1). See also *Holloman v. D. R. Horton, Inc.,* 241 Ga. App. 141, 146-147 (3) (524 SE2d 790) (1999) (finding waiver of right to rescind when original complaint affirmed the contract, even though amended complaint included claim for rescission). Additionally, he

failed to promptly rescind the contract before filing suit. He learned of the alleged misrepresentations in July 2001 and filed his complaint, which contained an allegation of contemporaneous rescission[1] in April 2002, a delay of almost nine months. See *Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (2) (547 SE2d 373) (2001) (delay of ten months in electing rescission resulted in waiver of that claim). Since Liberty failed to promptly rescind the contract, the merger clause barred his fraud claim and the trial court did not err in so holding.

3. Liberty asserts the trial court erred by granting summary judgment on his breach of contract claim because the contract expressly provided that the defendants could be sued for "fraud, willful injury, or willful violation of law." We find no merit in this claim, because in order to recover for breach of contract, Liberty must show that the defendants breached a duty owed under the contract and Liberty provided no evidence of any such breach here. Whether Liberty might otherwise have the right to sue for fraud, willful injury, or willful violation of the law simply has no bearing on his breach of contract claim. In this case, the contract clearly provided that it created no duty on the part of Public Storage to protect Liberty's personal property and that Liberty assumed all risk of loss. Since Liberty failed to present evidence that Public Storage breached any duty owed under the contract, the trial court did not err in granting summary judgment to the defendants on this claim.

4. In his remaining enumeration of error, Liberty claims the trial court erred in granting summary judgment to the defendants on his reckless supervision claim. In essence, Liberty is asserting a negligence claim that rises to the level of recklessness. We find that the trial court did not err in granting summary judgment on this claim for several reasons. First, even if we assume that all of the facts asserted by Liberty are true and properly in evidence,[2] Public Storage's conduct would be ordinary negligence only, not gross, reckless, or intentional. Thus, this claim is barred by the limitation of liability contained in the contract. Second, in order to support a claim of negligence, Liberty must show that Public Storage breached a duty. As we have already held in Division 3, the contract created no duty on

---

[1] "Because Plaintiff's reliance on Defendants' security system, and Plaintiff's election of terms under the Agreement were based on the fraudulent representations of Defendants and their agents, the Agreement *is hereby rescinded*." (Emphasis supplied.)

[2] Liberty's evidence of the previous theft is questionable because no witness testified about the alleged incident and the police report was uncertified and contains hearsay. *Scott v. Larosa & Larosa, Inc.*, 253 Ga. App. 489, 490 (559 SE2d 525) (2002) (holding narrative in police report is hearsay which cannot be considered by trial court when ruling on a motion for summary judgment).

the part of Public Storage to supervise Liberty's property. Moreover, Public Storage did not assume a duty to supervise, not otherwise owed, in its operation manual. As evidenced by the Good Samaritan Doctrine, which is embodied in the Restatement of Torts, 2nd, § 324 A:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

(Citation and punctuation omitted.) *Finley v. Lehman*, 218 Ga. App. 789, 790 (1) (463 SE2d 709) (1995). None of these circumstances applies here. Public Storage did not undertake to perform a duty owed by another person and there is no evidence that Liberty relied upon anything in the operations manual, as he was not aware of the manual until after he filed suit. Finally, there is no evidence that Public Storage's conduct increased the risk of harm, in this case the theft of Liberty's trailer. See *BP Exploration & Oil v. Jones*, 252 Ga. App. 824, 830 (2) (a) (558 SE2d 398) (2001) (physical precedent only) (negligence needed to increase harm must expose injured person to greater risk of harm than that which previously existed). Even if we were to assume that the operations manual required Public Storage to perform daily counts on the vehicles stored in the outdoor parking spaces, Public Storage's failure to do so would not have increased the risk of theft because daily counts could only detect that a theft might have occurred *after* the theft has already occurred.

For all of these reasons, the trial court did not err in granting summary judgment to Public Storage on Liberty's recklessness claim.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 17, 2004.

*Freed & Bermen, Robert H. McKnight, Jr.*, for appellant.
*Drew, Eckl & Farnham, George R. Moody, Julia K. Lindsey*, for appellees.