**WORKER'S COMPENSATION LEGAL CLINIC OF LOUISIANA, Plaintiff,**

. v.

**BELLSOUTH TELECOM-MUNICATIONS, INC., et al., Defendants.**

**No. CIV.A.1:03 CV 2327 T.**

United States District Court, N.D. Georgia, Atlanta Division.

June 21, 2005.

Joseph Gerald Albe, pro hac vice, Office Of Joseph G. Albe, New Orleans, LA, for plaintiffs.

Wayne Thomas McGaw, PHV, James F. Perot, PHV, New Orleans, LA, David F. Bienvenu, PHV, Shawn L. Holahan, PHV, Hoffman Siegel Seydel Bienvenu Centola & Cordes, New Orleans, LA, for defendants.

## OPINION AND ORDER

THRASH, District Judge.

This is a breach of contract action. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 57]. For the reasons set forth below, the Defendants' Motion is GRANTED.

## I. BACKGROUND

Plaintiff Worker's Compensation Legal Clinic of Louisiana, Inc. is a Louisiana for-profit corporation that provides legal services to injured workers. The Plaintiff entered into a contract with Defendant BellSouth Telecommunications, Inc. ("BST") for telephone services. Upon direction from Defendants BST and Bell-South Advertising and Publishing Corporation ("BAPCO"), the Plaintiff contacted Defendant L.M. Berry and Company ("Berry") to order Yellow Pages advertising services. On September 24, 1999, the Plaintiff and BAPCO entered into an advertising contract whereby BAPCO agreed to place advertisements in its Yellow Pages and telephone listings in its White Pages for the 2000–01 year in New Orleans, Louisiana, in exchange for monthly payments. The parties entered into similar advertising contracts for the 2001–02 and 2002–03 years.

In February 2002, the Plaintiff discovered that the name and telephone number of Joe Albe were listed under the Plaintiff's name and listing in the 2001–02 New Orleans White Pages. On February 4, 2002, Mr. Albe, the Plaintiff's attorney at the time, notified the Defendants that his name was erroneously placed under the Plaintiff's listing and demanded its prompt removal. Mr. Albe's name and telephone number do not appear with the Plaintiff's telephone listing in the 2002–03 White Pages. The Plaintiff contends that Mr. Albe's erroneous listing constitutes a breach of contract.

On or about February 15, 2002, the Plaintiff enrolled in the Defendants' "Guaranteed Advertising Program." Through its agent, Robert Lenter, the Plaintiff negotiated and signed an advertising order and a document entitled "Guaranteed Ad Addendum to Directory Advertising Order." The Plaintiff contends that representatives of the Defendants made numerous misrepresentations about the nature and scope of the guarantees associ-

ated with this advertising plan. These alleged misrepresentations are the basis for the Plaintiff's claim of fraudulent inducement to contract.

On February 7, 2003, the Plaintiff filed a complaint in a Louisiana state court, asserting claims for breach of contract and fraudulent misrepresentation against the named Defendants. On March 14, 2003, the Defendants removed the case to the United States District Court for the Eastern District of Louisiana on the basis of diversity jurisdiction. The Defendants moved to transfer the case to the Northern District of Georgia based on forum selection provisions in the parties' advertising contracts. On July 28, 2003, the case was transferred to this Court. On March 3, 2004, after obtaining new counsel, the Plaintiff amended its complaint to include more specific allegations of fraudulent misrepresentation. On August 25, 2004, the Defendants answered the Plaintiff's amended complaint and filed a counterclaim against the Plaintiff for past due payments. The Defendants move for summary judgment of both the Plaintiff's amended claims and their counterclaim.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. Breach of Contract

In its initial complaint and the amendment thereto, the Plaintiff asserts a claim for breach of contract against the Defendants.[1] The Plaintiff alleges that the Defendant BAPCO breached its obligations under advertising contracts with the Plaintiff by incorrectly placing another attorney's name under the Plaintiff's 2001–02 White Pages listing. For this erroneous listing, the Plaintiff claims that it should recover no less than $80,000, including damages for embarrassment and potential exposure to civil actions. (*See* Compl., ¶ 4; Am. Compl., ¶¶ 7, 8.) The advertising orders contemplate mistaken directory entries. In these orders, the client—here, the Plaintiff—stipulates that "occasional errors, omissions, and misplacements in advertising may occur in our directories and cannot be corrected until the next issue" and that "any potential harm from an error, omission, or misplacement is speculative in nature." (Defs.' App. Exs. Supp. Mot. Summ. J., Ex. B at ¶ 10.) The erroneous listing does not appear with the Plaintiff's entry in the 2002–03 White Pages.

The Plaintiff's advertising orders also contained clear and unambiguous limi-

---

1. Though the Plaintiff appears to assert the claim against all named Defendants, BAPCO is the only Defendant party to the advertising contracts. Thus, the contract claim is dismissed as against all other named Defendants.

tations of liability. Paragraph 10 of the terms and conditions of the advertising order provides that:

ANY LIABILITY WHICH WE MAY HAVE DUE TO ERRORS, OMISSIONS OR MISPLACEMENTS IN YOUR ADVERTISING SHALL NOT EXCEED THE AMOUNT OF CHARGES FOR THE ADVERTISING IN WHICH THE ERROR, OMISSION OR MISPLACEMENT OCCURRED. OUR LIABILITY SHALL BE DISCHARGED ... BY REDUCTION OF YOUR CHARGES FOR ANY ERROR OR MISPLACEMENT IN PROPORTION TO ANY REDUCTION OF THE VALUE OF THE ADVERTISING DUE TO THE ERROR OR MISPLACEMENT.

(*Id.*) Absent a countervailing public policy interest, parties are free to contract to waive rights, including the right to recourse in the event of breach by the other party. *See Flanigan v. Executive Office Ctrs., Inc.,* 249 Ga.App. 14, 15, 546 S.E.2d 559 (2001); *Imaging Sys. Int'l. Inc. v. Magnetic Resonance Plus, Inc.,* 227 Ga. App. 641, 644, 490 S.E.2d 124 (1997). Here, the only damages that the Plaintiff may claim are entirely speculative and waived by the contract. As the Plaintiff has not paid for the advertising at issue in this case, it is not entitled to recover any damages from Defendant BAPCO for breach of contract. Rather, pursuant to the limitation of liability, the Plaintiff's recovery in contract, if any, would be limited to an offset against its current debt to Defendant BAPCO.

■ The Plaintiff may not recover any damages, however, where the cause of damage is speculative. *See Pendley Quality Trailer Supply, Inc. v. B & F Plastics, Inc.,* 260 Ga.App. 125, 126–27, 578 S.E.2d 915 (2003) (denying recovery where damages question is "left to speculation, conjecture and guesswork"); *Shepherd v.*

*Aaron Rents, Inc.,* 208 Ga.App. 139, 143, 430 S.E.2d 67 (1993) (requiring the "ability to estimate damages to a reasonable certainty"). There is no evidence in the record which demonstrates, or even suggests, that the erroneous entry of an additional attorney under the Plaintiff's telephone listing in the 2001–02 New Orleans White Pages has reduced the value of the Plaintiff's listing. There is no evidence which intimates that the incorrect entry caused the Plaintiff to lose profits or to face "embarrassment as well as possible exposure to past and future civil actions." (*See* Compl., ¶ 4; Am. Compl., ¶¶ 7, 8.) Indeed, courts have routinely held that due to the difficulty in attributing a portion of an advertiser's business to its phone directory advertising, lost profits damages are unduly speculative in cases involving errors in Yellow Pages advertisements. *See, e.g., Shealey's, Inc. v. Bell Tel. & Tel. Co.,* 126 F.Supp. 382, 387–88 (D.S.C.1954); *Tannock v. New Jersey Bell Tel. Co.,* 223 N.J.Super. 1, 537 A.2d 1307, 1310 (1988). Here, the Plaintiff presents no evidence suggesting that the recovery sought was caused by the alleged breach of contract and no evidence suggesting that the contractual damages sought could be estimated to a reasonable certainty. Thus, summary judgment on the Plaintiff's breach of contract claim for the Defendants is warranted.

### B. Fraud

■ In its first amendment to its complaint, the Plaintiff asserts a claim against the Defendants for fraud and misrepresentation. In order to establish fraud in Georgia, a plaintiff must show that it reasonably relied upon a false representation made with scienter by a defendant who intended to induce the plaintiff to act or refrain from acting, resulting in damage to the plaintiff. *Crawford v. Williams,* 258 Ga. 806, 808, 375 S.E.2d 223 (1989); *Meyer*

*v. Waite*, 270 Ga.App. 255, 257, 606 S.E.2d 16 (2004). The Plaintiff alleges that the Defendants intentionally misrepresented the benefits of its Guaranteed Advertising Program to the Plaintiff's agent, Robert Lenter. The Plaintiff alleges that the Defendants made false guarantees to Mr. Lenter with the intention of inducing him to participate in the program and to execute the advertising orders at issue. This claim relies exclusively on alleged representations made outside the Plaintiff's written agreement with the Defendants.

Where a contract has a merger clause, the parties may no longer reasonably rely on representations made outside the contract. *Kobatake v. E.I. DuPont De Nemours & Co.*, 162 F.3d 619, 625 (11th Cir. 1998); *First Data POS, Inc. v. Willis*, 273 Ga. 792, 794–95, 546 S.E.2d 781 (2001). The Court of Appeals for the Eleventh Circuit has noted that:

> Where, as here, a contract contains an entire agreement clause, that clause operates as a disclaimer, establishing that the written contract completely and comprehensively represents all of the parties' agreement and thus bars plaintiffs from asserting reliance on the alleged misrepresentation not contained within the contract.

*Kobatake*, 162 F.3d at 625. Where a party elects to affirm a contract with a merger clause, it is relegated to recovery in contract, and the merger clause will prevent its recovery. *Liberty v. Storage Trust Props., L.P.*, 267 Ga.App. 905, 910, 600 S.E.2d 841 (2004). The advertising contracts between the Plaintiff and the Defendants contained a standard merger clause:

> This [advertising order], if accepted by us, and any associated Printing Order, Detailed Confirmation, Proof Copies and any Special Advertising agreements are our entire agreement with you, and shall be governed by the laws of the State of Georgia. We will not be bound by and disclaim any warranty or right to rely upon any other agreement or representation . . . .

(Defs.' App. Exs. Supp. Mot. Summ. J., Ex. B at ¶ 11.) In addition, the February 15, 2002 advertising order contains a merger clause:

> We will not be bound by and disclaim any warranty or right to rely upon, any custom or prior course of dealing and any other agreement or representation . . . . This AO, if accepted by us, and any associated forms are our entire agreement with you and shall be governed by the laws of the State of Georgia.

(*Id.*, Ex. F at ¶ 14.) If the contract is valid and the Plaintiff did not promptly rescind it, the entire agreement clauses bar the Plaintiff from showing that it reasonably relied on any alleged extra-contractual representations, including the alleged misrepresentations to Robert Lenter.

The Plaintiff first contends that the 2001–02 advertising contracts are invalid because the Plaintiff's agent, Robert Lenter, lacked capacity to contract at the time that the agreement was executed. For a contract to be void based on the maker's incapacity, the maker "must have been *non compos mentis*, that is, entirely without understanding, at the time the contract was executed." *Armour v. Peek*, 271 Ga. 202, 203, 517 S.E.2d 527 (1999) (quoting *Jones v. Smith*, 206 Ga. 162, 165, 56 S.E.2d 462 (1949)); *see also Doster v. Bates*, 256 Ga.App. 585, 589–90, 568 S.E.2d 736 (2002). The law presumes every person to be of sound mind and discretion until there is evidence to the contrary, and the heavy burden to present such evidence rests with the party asserting incapacity. *Armour*, 271 Ga. at 203, 517 S.E.2d 527 (quoting *Jones*, 206 Ga. at 165, 56 S.E.2d 462). Here, the Plaintiff presents only deposition testimony that Mr. Lenter mentioned that he was ill and medicated during the execu-

tion of the advertising contract. Mr. Lenter was accompanied by two associates in his negotiations with the Defendants. He had signed identical advertising contracts in the past. In light of these facts, testimony of Mr. Lenter's self-evaluation of his medical condition is clearly insufficient to establish that Mr. Lenter was entirely without understanding when executing the advertising orders. The advertising orders are, thus, not void for incapacity at their execution.

The Plaintiff also appears to contend that the contract was not "perfected" when the Plaintiff decided to enroll in BAPCO's Guaranteed Advertising Program. The advertising order states that if the Defendants accept the advertising order, they will publish the Plaintiff's advertising "unless . . . [the Plaintiff has] failed to pay any prior advertising charges." (Defs.' App. Exs. Supp. Mot. Summ. J., Ex. F at ¶ 2.) The Plaintiff argues that because it owed previous advertising charges, it could not be given the privilege of published advertisements. This contract provision should not be read as a limitation on the Defendants' range of options; rather, it is a means by which the Defendants, if so inclined, may encourage repayment of debts. In this case, it apparently had exactly this effect, as Mr. Lenter provided the Defendants with a down payment on the debt and agreed to pay the remainder of the debt incurred by the Plaintiff. The Plaintiff's pre-existing debt neither invalidates the contract nor excuses the Plaintiff from adherence to the contracted terms, including the merger clause.

Finally, the Plaintiff argues that the Defendants waived or otherwise invalidated the merger clause by hinging their acceptance of its advertising orders on approval from their collection department. The Plaintiff appears to suggest that the Defendants waived or breached the "entire agreement" clause by imposing a non-contractual requirement—external financial approval—upon the Plaintiff. Approval from the Defendants' collections department was built into the contract. The advertising order states: "If we [the Defendants] accept this AO, we will publish your [the Plaintiff's] Advertising unless . . . we find that your credit records do not meet our requirements. Your offer, as set out in this AO, shall be considered accepted by us at our executive offices upon publication of your Advertising." (Defs.' App. Exs. Supp. Mot. Summ. J., Ex. F at 2.) The express terms of the contract contemplate approval of the Plaintiff's credit prior to official acceptance of the offer. This financial requirement is written into the contract, and the Defendants' adherence to it does not contravene, much less defeat, the contract's merger clause. Thus, both the advertising contract and the merger clause therein are valid.

As the merger clause is both valid and controlling, the Plaintiff cannot, as a matter of law, reasonably rely on the Defendants' alleged oral representations made outside the advertising contracts. Thus, the Plaintiff's fraud claim can survive summary judgment only if the Plaintiff properly rescinded the contract. *Liberty v. Storage Trust Props., L.P.,* 267 Ga.App. 905, 910, 600 S.E.2d 841 (2004). Rescission of a contract "must be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered." *Weed Wizard Acquisition Corp. v. A.A.B.B., Inc.,* 201 F.Supp.2d 1252, 1260–61 (N.D.Ga. 2002) (quoting *Holloman v. D.R. Horton, Inc.,* 241 Ga.App. 141, 146, 524 S.E.2d 790 (1999)). A party cannot rescind a contract and then act in a manner inconsistent with the repudiation of the contract. *Liberty,* 267 Ga.App. at 910, 600 S.E.2d 841 (holding that "such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity").

In *Liberty v. Storage Trust Properties, L.P.*, 267 Ga.App. 905, 600 S.E.2d 841 (2004), the plaintiff sued a storage company for breach of contract, fraud, and negligence in connection with the loss of his trailer stored on the company's property. The contract for the plaintiff's parking space expressly disclaimed liability for loss to the plaintiff's property. *Id.* at 905, 600 S.E.2d 841. The contract also contained a merger clause disclaiming any representations or warranties made outside the written agreement. *Id.* at 905–06, 600 S.E.2d 841. The plaintiff contended that this merger clause was without effect because he had promptly rescinded the contract. *Id.* at 910, 600 S.E.2d 841. In upholding summary judgment for the storage company based on the contractual provisions, the Court of Appeals held:

> Having rejected Liberty's claim to avoid the issue of prompt rescission, we now turn to the record, which shows that Liberty did not seek to rescind the contract until he filed his complaint. Although Liberty alleged he was "hereby" rescinding the contract in his complaint, he also asserted a separate cause of action for breach of contract. By seeking damages for breach of contract in his complaint, Liberty took action "inconsistent with a repudiation of the transaction" and lost his right to rescind the contract.

*Id.* at 911, 600 S.E.2d 841 (quoting *Cotton v. Bank South*, 231 Ga.App. 812, 814–15, 499 S.E.2d 129 (1998)). Here, as in *Liberty*, the Plaintiff has asserted and maintained a separate action for breach of contract in its original complaint and all amendments thereto. Thus, the Plaintiff has affirmed the advertising agreements and has thereby waived any right to rescind these contracts. Neither void as of their formation nor effectively rescinded by the Plaintiff, the advertising orders expressly bar the Plaintiff from reasonably relying on representations made outside the contract. Summary judgment of the Plaintiff's fraud claim for the Defendants is warranted. The Plaintiff's claims for punitive damages and attorneys' fees rely on the success of their claims in contract and tort. Therefore, summary judgment on these claims for the Defendants is also proper.

## C. *Defendants' Counterclaim*

The Defendants assert a counterclaim against the Plaintiff for breach of contract, alleging that the Plaintiff is liable for telephone directory advertising services and telephone services received under 2000 and 2001 contracts with the Defendants. The Plaintiff has not responded to the counterclaim and has not refuted the Defendants' allegations. The Defendants' evidence is unrefuted that the Plaintiff is indebted to them for advertising and telephone services. Thus, the Defendants are entitled to summary judgment on their counterclaim.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 57] is GRANTED. The Clerk is directed to enter judgment in favor of the Defendants on the Plaintiff's claims. Summary judgment for the Defendants on their Counterclaim for unpaid advertising fees and telephone charges is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant BAPCO and against the Plaintiff in the amount of $122,779.43, plus interest and costs. The Clerk is directed to enter judgment in favor of the Defendant BST and against the Plaintiff in the amount of $30,367.22, plus interest and costs.