## A02A0536. DOSTER v. BATES.
### (568 SE2d 736)

MIKELL, Judge.

Faye Doster is the daughter of Oneida McGuffey, who executed a quitclaim deed conveying title to a parcel of land and the home on the land to her husband, Johnny William McGuffey. After Johnny's death, Doster filed an action to set aside the deed, arguing that her mother did not have the mental capacity to execute it. Frances Bates, the executrix of Johnny's estate, filed a motion for summary judgment, which the trial court granted. On appeal, Doster argues that the trial court erred in granting summary judgment because a genuine issue of material fact remained as to her mother's mental capacity to execute the deed. We affirm.

In reviewing the trial court's grant of summary judgment, this Court conducts a de novo review of the evidence.[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of fact and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[2]

So viewed, the evidence shows that Oneida and Johnny McGuffey were married on August 14, 1984. Three days after the wedding, Oneida paid cash for a home at 245 Carwood Drive, Monroe, Georgia, and the deed was filed in her name alone. Oneida and Johnny lived together in the home until Oneida moved into a nursing home in March 1998. On January 5, 1995, Oneida executed a quitclaim deed transferring all of her rights and ownership in the 245 Carwood Drive property to Johnny. Johnny died in December 1999, leaving the property and his possessions to pass through his testamentary estate.

---

[1] *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).
[2] Id.

On January 4, 2000, Doster, as next friend of Oneida McGuffey, filed a complaint to set aside the quitclaim deed on the grounds that Oneida did not have the mental capacity to sign a legal document on January 5, 1995, because she had suffered from Alzheimer's disease and dementia for an extended period of time prior to the date the deed was signed.[3] Doster amended her complaint on November 20, 2000, to add a claim to void the transfer of title of two vehicles on September 14, 1993, from Oneida to Johnny. Bates filed a motion for summary judgment, arguing that Doster could not show that Oneida was mentally incompetent when the deed was executed and that the transfer of the vehicles' titles could not be voided because Oneida never owned the vehicles.[4] The trial court agreed and granted the motion.

1. In her sole enumeration of error, Doster argues that the trial court erred in granting Bates's motion because a jury issue exists as to whether Oneida had the mental capacity to execute the quitclaim deed and to transfer the titles to the two automobiles.[5] In support of her argument, Doster offered the deposition testimony of three physicians: Dr. C. Van Morris, Dr. Sarah McBee, and Dr. Palghat Mohan. She also submitted her affidavit and affidavits from two of her siblings.

Dr. Morris, a neurologist, first treated Oneida on February 11, 1993. Dr. Morris deposed that after conducting a physical and neurological examination of Oneida, he concluded that she probably suffered from dementia, which he defined as "literally a going away from the mind." Dr. Morris next saw Oneida on May 12, 1993, and concluded that her mental status had not changed. At Oneida's next visit on April 8, 1994, Dr. Morris concluded that she was "a little bit better oriented" but that she still had dementia, though it had not progressed much.

Dr. Morris saw Oneida again two days before she signed the deed in question. Oneida had been in the hospital because she had suffered a broken kneecap. When Dr. Morris saw her, she reported that she had taken two to three doses of Haldol because she had been agitated. Dr. Morris explained that Haldol is usually given in an attempt to decrease agitation and to induce sleep in individuals suffering from dementia. Dr. Morris recalled that Oneida was better by the time she was discharged. On Oneida's next visit with Dr. Morris

---

[3] While the matter was pending, Oneida died and Doster was named as the administratrix of Oneida's estate.

[4] This was Bates's second motion for summary judgment. Her first motion for summary judgment, arguing that Doster's claims were barred by judicial and collateral estoppel, was denied.

[5] In her brief, Doster lists two errors, but the second is not an error. It simply states that this Court has jurisdiction over her case.

on March 14, 1995, he opined that she still suffered from dementia, but she had improved. By Oneida's May 7, 1997 appointment, Dr. Morris highly suspected that she had developed Alzheimer's disease, which Dr. Morris described is a subset of dementia.

During cross-examination, Dr. Morris stated that throughout the four years that he treated Oneida, he gave her "mini mental" status examinations, which measured her cognitive functions. Based on the test results, there was no progressive decline in Oneida's mental status during the time that he treated her. When asked whether he had any knowledge as to whether Oneida understood the deed she executed on January 5, 1995, Dr. Morris replied that he did not.

Dr. McBee, an internist, deposed that she treated Oneida from March 31, 1992, through December 13, 1993. When Oneida visited Dr. McBee on December 15, 1992, she complained that she was becoming very forgetful. Dr. McBee recalled that other than Oneida's complaint, she seemed to be neurologically intact. However, she thought Oneida's memory loss might be caused by dementia or early Alzheimer's disease, so when Oneida returned for a visit on January 8, 1993, complaining of feeling crazy, nervous, and forgetful, Dr. McBee referred her to a neurologist.[6] Dr. McBee saw Oneida several times through the end of December and maintained that she suffered from Alzheimer's disease.

On cross-examination, Dr. McBee explained that dementia involves a gradual loss of cognitive functions over years and that there are periods of lucidity or normal functioning for those suffering from it. Like Dr. Morris, Dr. McBee also deposed that she had no knowledge as to whether Oneida understood the deed when she executed it.

The last physician's deposition testimony offered by Doster was that of Dr. Mohan, an internist. Dr. Mohan treated Oneida three times between 1989 and 1994. But from September 26, 1994, until her death, he saw her frequently. Dr. Mohan saw Oneida on December 27, 1994, when she was in the hospital for her broken kneecap. At that time, he noted that she was confused to the point that she did not know what was going on. She was discharged on December 30, 1994, and Dr. Mohan did not see her again until June 7, 1995. At that visit, Dr. Mohan noted that Oneida had a very poor memory. By her April 7, 1998 visit, Dr. Mohan stated that he knew that Oneida suffered from Alzheimer's disease. On cross-examination, Dr. Mohan testified that he had no knowledge as to whether Oneida understood the deed she executed, but he did recall that she told him that she had given her house to her husband because she loved him.

---

[6] There is no evidence in the record as to this neurologist's findings.

Doster's affidavit, as well as those from her siblings, averred that based on their interactions with Oneida, they concluded that she was not competent by 1993. However, these affidavits have no probative value.

> The testimony of a nonexpert witness on the ultimate legal conclusion as to whether the mental condition of a grantor precluded her from making a deed has no probative value. Lack of mental capacity to make a deed can not be shown by the testimony of nonexpert witnesses who give their opinion that the mind of the grantor was unsound, when the reasons given by them for their opinion disclose nothing to authorize the conclusion of lack of mental capacity.[7]

Doster contends that the evidence she offered established her mother's state of mind within a reasonable amount of time both before and after the execution of the deed, which was sufficient to demonstrate her mother's mental incapacity to execute the legal document. In support of her contention, she relies on *Kievman v. Kievman*,[8] *Horton v. Horton*,[9] *Fleming v. Constantine*,[10] and *Kesler v. Kesler*,[11] three of which are factually distinguishable. The other case does not include the facts upon which the decision was based.

In *Kievman*, a question of fact was created by evidence that on the day the will at issue was executed, the testator was unable to communicate intelligibly, and on the days before, the day of, and days after he executed the will, the testator was very ill, heavily medicated, and incoherent.[12] In *Horton*, there was testimony from the two subscribing witnesses and the physician who treated the testator immediately before and after the execution of the will that the testator was not of sound mind when the will was executed.[13] Finally, in *Kesler*, the doctor who testified that the grantor was of sound mind when he executed the document also testified on cross-examination that he would not say a person was of sound mind who had the symptoms displayed by the testator.[14] There was no such evidence in this case. Instead, here, the affidavit of Scott Willis, the attorney who prepared the quitclaim deed, was the only evidence offered to show Oneida's mental capacity on the day that she executed the deed. It is

---

[7] (Citations omitted.) *Warren v. Warren*, 221 Ga. 227, 229 (2) (144 SE2d 115) (1965).
[8] 260 Ga. 853 (400 SE2d 317) (1991).
[9] 268 Ga. 846 (492 SE2d 872) (1997).
[10] 265 Ga. 525 (457 SE2d 714) (1995).
[11] 219 Ga. 592 (134 SE2d 811) (1964).
[12] *Kievman*, supra at 853 (1).
[13] *Horton*, supra at 846-847 (1).
[14] *Kesler*, supra at 594 (3).

evidence that Oneida was competent on the day in question.

Willis averred that Oneida came to his law firm on January 5, 1995, and asked him to prepare the quitclaim deed. Willis further averred that:

> [W]e met in the conference room and had a rather lengthy discussion regarding the transfer of this property. Mrs. McGuffey specifically stated that she wished to convey the property . . . to her husband, Mr. Johnny William McGuffey and I prepared the . . . deed at her request. No one accompanied Mrs. McGuffey in the room except my law partner, Mr. Mixon who was a witness and myself, and there was no coercion by anyone to have Mrs. McGuffey sign the deed. It has always been my policy to question a person conveying property or making a will to ascertain whether or not they are competent to so do, and on this particular occasion I made certain that Mrs. McGuffey knew exactly what she was doing. In this situation, I followed this policy and determined that Mrs. McGuffey was competent and knew exactly what she was doing in transferring this real estate. Mrs. McGuffey knew and understood the consequences of signing the deed and it was her specific intent to transfer the real estate to her husband. . . . If I had not been certain of Mrs. McGuffey's mental competency and of the fact that she realized and understood what she was doing in transferring the real estate to her husband, I would not have prepared the deed for her execution.

Doster offered no evidence to dispute any of Willis's assertions.

Doster is correct that a court may consider evidence from before and after the day in question to determine mental competency. However, our Supreme Court held in *Thomas v. Garrett*,[15] that the "appellant [still has] the burden of showing that [her mother] was non compos mentis, that is *entirely without understanding* at the time the deed was executed."[16] Further, "weakness of mind not amounting to imbecility is not sufficient mental incapacity to justify setting a deed aside."[17] In *Thomas*, the appellant sought to cancel a deed she executed. She presented opinion evidence that her recent surgery, coupled with her continuing medication, detrimentally affected her mental capacity at the time she executed the deed. More importantly, however, as in the instant case, the actual witnesses to Thomas's exe-

---

[15] 265 Ga. 395 (456 SE2d 573) (1995).
[16] (Citations and punctuation omitted; emphasis supplied.) Id. at 398 (3).
[17] (Citations and punctuation omitted.) Id.

cution of the deed testified that they had no doubt as to her mental capacity. Also, Thomas's physician found no indication of mental incapacity when he examined her the day after the closing. Thus, there was evidence of sufficient mental capacity to execute the deed and the trial court's grant of a directed verdict on the issue was upheld.[18]

In *Armour v. Peek*,[19] which, like the case sub judice, involves an appeal from the grant of summary judgment in an action to set aside a deed, our Supreme Court held that "[t]he law presumes every man to be sane until there is evidence to the contrary, and the burden is on the party attacking a contract to show the incompetency of the signer at the time of the execution thereof."[20] In *Armour*, the Court found that evidence that the maker of the deed was sometimes forgetful and failed to recognize relatives did not establish the fact of his mental incapacity at the time the deed was executed.

In this case, the evidence offered by Doster did not show that Oneida failed to understand the deed when she executed it. Dr. Morris, who treated Oneida two days before she executed the deed, did not depose that she was mentally incompetent to execute the deed. Instead, when asked if he had knowledge about Oneida's understanding of the deed when she signed it, he replied that he did not. Dr. McBee deposed that patients suffering from dementia have moments of lucidity and clarity. Dr. Mohan recalled that Oneida told him that she gave her husband the property because she loved him. Accordingly, since Doster did not satisfy her burden to show that her mother was entirely without understanding when she executed the deed, we must affirm the trial court's grant of summary judgment to Bates.

2. Doster mentions in her appellate brief that the trial court erred by failing to set aside the transfer of the titles to two vehicles but does not support this alleged error with citation of authority or argument. We therefore deem this error abandoned pursuant to Court of Appeals Rule 27 (c) (2).[21]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[18] See also *Gornto v. Gornto*, 217 Ga. 136 (121 SE2d 139) (1961) (testator was mentally competent to execute a will where there was testimonial evidence from the subscribing witnesses to the testator's will that he was competent and from his physician that he was capable of making decisions as to his personal affairs even though he may have been under the influence of medication).

[19] 271 Ga. 202 (517 SE2d 527) (1999).

[20] Id. at 203 (2).

[21] *Rose v. Barbee*, 236 Ga. App. 176 (2) (511 SE2d 268) (1999).

DECIDED JUNE 19, 2002 —
RECONSIDERATION DENIED JULY 17, 2002.

*James D. Crowe*, for appellant.
*Benton, Preston & Malcom, Eugene M. Benton, Robert M. Malcom*, for appellee.