**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 19, 2018**

# In the Court of Appeals of Georgia

A18A0128. MULLIS v. WELCH et al.

MERCIER, Judge.

This case arises from a family dispute over the inheritance of real property. Vaudre Mullis was the mother of Rodney Mullis, Lora Welch, Loris Wendell ("Wendell") Mullis, Larry Mullis, and Rhonda Metts, and the grandmother of Allison Mullis and Krista Mullis Jones.[1] In 1999, Vaudre deeded certain real estate to herself as trustee of the Vaudre T. Mullis Revocable Trust Agreement (the "1999 trust"). On August 23, 2010, she revoked the 1999 trust and executed a deed from herself as trustee of the 1999 trust conveying property to herself individually. The same day, Vaudre executed an irrevocable trust agreement (the "2010 trust agreement") creating

---

[1] For clarity, all of the parties and other family members will be referred to herein using their first names.

a new trust (the "2010 trust"), of which she is the sole settlor and Lora and Wendell are the trustees, and executed a deed transferring real property to the 2010 trust (the "2010 deed"). On August 24, 2010, Vaudre executed her Last Will and Testament (the "will"). She died on November 14, 2011.

The 1999 trust agreement is not part of the record, but it is undisputed that under the agreement, Rodney stood to receive a 75-acre tract which was a portion of the corpus of the 1999 trust. The 2010 trust agreement provides instead that, following Vaudre's death, the 75-acre tract is to be transferred to Vaudre's granddaughters, Allison and Krista, and Rodney is to receive a different, 38.501-acre tract.

In 2015, Rodney filed a complaint against the trustees in the Superior Court of Bacon County, alleging that Vaudre was without sufficient mental capacity to execute the 2010 trust agreement and was operating under the undue influence of the trustees "and others" in the execution of "the purported trust." The complaint seeks a temporary restraining order restraining and enjoining the trustees from executing and delivering or recording any deeds, and requests that "the [d]eeds . . . be set aside." The trustees moved for summary judgment and a hearing was held on the motion. The trustees argued that (among other things) Rodney's evidence did not give rise to triable issues of material fact as to the claims of mental incapacity and undue influence.

2

Subsequently, the trial court requested that the parties submit briefs on the issue of mootness. The briefs were apparently submitted electronically and are not part of the appellate record.

The trial court found that the issues for determination in this case were moot and granted summary judgment to the trustees. The court's holding was based on its finding that Rodney did not challenge in the instant case the revocation of the 1999 trust and did not challenge the 2012 probate of the will, which contains a clause providing that the residue of Vaudre's estate is bequeathed to the trustees to be held, administered and distributed as provided by the terms of the 2010 trust. Therefore, the trial court held, even if Rodney were successful in having the 2010 trust set aside, because he did not contest the revocation of the 1999 trust, title to the 75-acre tract would (as part of the residue of Vaudre's estate) pass pursuant to the terms of the will to the trustees of the 2010 trust for distribution as provided in the 2010 trust agreement, and the outcome would thus be no different than if summary judgment were granted to the trustees.

Rodney appeals, contending that the trial court erred in holding that he did not contest the revocation of the 1999 trust and that conflicts in the evidence regarding

3

undue influence and Vaudre's mental capacity to execute the trust-related documents[2] require resolution of the case by a fact finder. For the following reasons, the trial court's finding of mootness was erroneous, but the grant of summary judgment was nonetheless proper, and we affirm the judgment below.

1. The trial court erred in finding that Rodney's claim was moot because he did not contest the revocation of the 1999 trust in this action.

> [T]he Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be construed liberally and reasonably to achieve substantial justice consistent with the statutory requirement of the Act. Pleadings serve only the purpose of giving notice to the opposing party of the general nature of the contentions of the pleader, and thus general allegations are sufficient to support a plaintiff's claim for relief.

*Wright v. Waterberg Big Game Hunting Lodge Otjahewita (Pty), Ltd.*, 330 Ga. App. 508, 510 (1) (767 SE2d 513) (2014) (citation omitted). "[A] complaint is not required to set forth a cause of action, but need only set forth a claim for relief." *One Bluff Drive, LLC v. K. A. P., Inc.*, 330 Ga. App. 45, 48 (1) (766 SE2d 508) (2014)

---

[2] Rodney's second enumeration of error states that there were conflicts in the evidence regarding the issue of undue influence only, but in the argument in support of that enumeration he also asserts that there was sufficient evidence regarding mental incapacity to create a jury issue.

4

(citation and punctuation omitted) (holding that the jury was properly charged on the issue of quantum meruit where the claim was not raised in the complaint, but was raised in other pleadings and the pretrial order, the jury was presented with evidence regarding that claim, and the law supported the claim based on the plaintiff's version of the facts).

The requested relief in Rodney's complaint includes setting aside the deeds "called for in the [2010] trust." The 2010 trust agreement states in its preamble that Vaudre "desire[d] to enter into th[e] [2010] [t]rust" and was simultaneously revoking the 1999 trust, and that she had irrevocably transferred to the trustees certain assets. The trustees stated in their summary judgment pleadings that Rodney was contesting the validity of the 2010 revocation and the 2010 trust agreement. The trustees were therefore on notice that Rodney was challenging the change in the arrangement for the distribution of Vaudre's property, and the revocation of the 1999 trust is an inherent part of the change. See *Wright*, supra. Thus, the trial court erred in finding that Rodney's claim was moot because he did not explicitly challenge the revocation.

Although the trial court's grant of summary judgment on the basis of mootness was erroneous, we uphold a grant of summary judgment if it is right for any reason, assuming that the reason was argued in the court below. *Serchion v. Capstone*

5

*Partners, Inc.*, 298 Ga. App. 73, 76 (2) (679 SE2d 40) (2009). "It is the grant itself that is to be reviewed for error, and not the analysis employed." Id. For the reasons described below, summary judgment was proper in this case.

2. Rodney is incorrect that the evidence he presented regarding mental capacity and undue influence is sufficient for his claim to survive summary judgment.

> Summary judgment is properly granted when the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party.

*Smith v. NT Nails, LLC*, 331 Ga. App. 98 (770 SE2d 646) (2015) (citation and punctuation omitted).

> A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out . . . that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. O. C. G. A. § 9-11-56 (e).

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "[C]onclusory statements in affidavits unsupported by factual evidence are insufficient to avoid summary judgment." *National Service Industries, Inc. v. Here to Serve Restaurants, Inc.*, 304 Ga. App. 98, 102 (685 SE2d 669) (2010) (citation omitted).

a. Evidence Required to Demonstrate Mental Incapacity

"[A] person has the capacity to create an inter vivos trust to the extent that such person has the legal capacity to transfer title to property inter vivos." OCGA § 53-12-23. "A deed may be deemed invalid and cancelled in equity on the ground of mental incapacity if the grantor is shown to be entirely without understanding of the deed at the time of execution." *Hansford v. Robinson*, 255 Ga. 530, 531 (2) (340 SE2d 614) (1986) (citation omitted).

> The testimony of a nonexpert witness on the ultimate legal conclusion as to whether the mental condition of a grantor precluded her from making a deed has no probative value. Lack of mental capacity to make a deed can not be shown by the testimony of nonexpert witnesses who give their opinion that the mind of the grantor was unsound, when the reasons given by them for their opinion disclose nothing to authorize the conclusion of lack of mental capacity.

7

*Doster v. Bates*, 256 Ga. App. 585, 588 (1) (568 SE2d 736) (2002) (citation omitted). "Further, weakness of mind not amounting to imbecility is not sufficient mental incapacity to justify setting a deed aside." Id. at 589 (1) (citation omitted).

b. Evidence Required to Demonstrate Undue Influence

For undue influence to be sufficient to invalidate a trust, it must amount to deception or force and coercion so that the grantor is deprived of free agency and the will of another is substituted for that of the grantor. It is not enough to show that there was an opportunity to exert influence coupled with a substantial benefit under the trust; actual deprivation of the grantor's free will is required. . . .A presumption of undue influence arises when it is shown that the trust was made at the request of a person who receives a substantial benefit, who is not a natural object of the maker's bounty, and who held a confidential relationship with the grantor. A confidential relationship exists where a person is so situated as to exercise a controlling influence over the will, conduct, and interest of the grantor. Further, evidence of the grantor's weakened mental state may support a finding of undue influence, as the influence necessary to dominate a weak mind is less than that necessary to dominate a strong one.

*Lewis v. Van Anda*, 282 Ga. 763, 766-767 (4) (653 SE2d 708) (2007) (citations and punctuation omitted). We note that this is the same standard required for the invalidation of a will or a deed as the result of undue influence over a testator/testatrix

or grantor. See *Smith v. Liney*, 280 Ga. 600, 601 (631 SE2d 648) (2006); *McCormick v. Jeffers*, 281 Ga. 264, 268 (4) (637 SE2d 666) (2006). The alleged undue influence must be shown to have occurred at the time of the execution of the instrument being challenged. See *Lipscomb v. Young*, 284 Ga. 835, 836 (672 SE2d 649) (2009).

   c. Rodney's Evidence

The only evidence that Rodney propounds in this case as to his claims of Vaudre's mental incapacity and subjection to undue influence are his own affidavit, the affidavit of his wife Ramona, and his own testimony from another legal action against Larry and Wendell. The testimony that Rodney cites is regarding a dispute between him and Wendell in 1999 over the division of Vaudre's property, in which both Rodney and Wendell apparently tried to convince Vaudre to bequeath the property in the ways that they each preferred. Rodney testified that during that dispute, Wendell threatened Rodney and said that unless Rodney stopped talking "about this will with mama," Wendell would not "even let [Rodney] have the field around [his] house."

Rodney's and Ramona's affidavits state that Vaudre had physical ailments in late July or early August 2010; that Rodney's siblings limited his visits with Vaudre and tried to "isolate" him from her; that his siblings prevented him from having private conversations with Vaudre during and after August 2010; that during and after August

9

2010 Vaudre was "noticeably weakened" and "appeared to be upset about something that occurred"; that prior to August 2010, Vaudre made statements to Rodney that the "farm property" that he leased from her was to be "his property"; that Rodney had multiple discussions with Vaudre that one of his daughters had "a history of drug abuse and financial waste"; and that contrary to Vaudre's "stated intents" the 2010 trust agreement conveys to Rodney's daughters property that Vaudre had described as being Rodney's. Ramona's affidavit also states that 75 acres were conveyed to Ramona's "stepdaughters, including the history of drug abuse and financial waste [sic] and which my mother[-]in[-]law said should not receive any property."

Rodney's affidavit further states that only two of eleven grandchildren are designated to receive property under the 2010 trust agreement, and they are the two grandchildren who had the least amount of contact with Vaudre; Rodney's siblings "told [Vaudre] lies and misrepresentations in an attempt to interfere with [his] relationship with [Vaudre]"; Wendell told Rodney that if Rodney "did not go along with what [Wendell] thought was best, . . . [Wendell] would make sure that [Rodney] got nothing out of the property"; Wendell exerted control and influence over Vaudre using his status as the executor of Rodney's father's estate; Rodney filed suit against Wendell in August 2010; and "[b]ased upon the conversation that [Rodney] had with

10

[Vaudre]," the 2010 trust agreement is consistent with the wishes and intent of Rodney's "siblings who made false accusations against [him] to [Vaudre] and who over the years exerted undue influence and control over Vaudre's actions." Rodney's affidavit also states that Vaudre did not have the mental capacity to execute the "[t]rust documents" when he saw her around August 23, 2010.

Rodney's evidence does not raise a genuine issue of material fact as to Vaudre's alleged weakened mental state or her mental incapacity in connection with her execution of the trust-related documents. See *Lau's Corp.*, supra. Rodney's statement in his affidavit that Vaudre did not possess the mental capacity to execute the documents when he saw her around August 23, 2010 is unsupported by any specific facts and is self-serving and conclusory. See *Doster*, supra; *National Service Industries, Inc.*, supra. Rodney's and Ramona's statements that Vaudre was "noticeably weakened" and upset during and after August 2010 are not sufficient to demonstrate the entire lack of understanding at the time of Vaudre's execution of the trust-related documents (including the revocation of the 1999 trust, the 2010 trust agreement and the 2010 deed) that is required to invalidate those documents. See *Hansford*, supra; *Doster*, supra.

11

Rodney's evidence also does not raise a genuine issue of material fact as to the alleged undue influence exerted by Rodney's siblings "and others" with regard to Vaudre's execution of the trust-related documents. Rodney's statement regarding his siblings' alleged undue influence and control over Vaudre "over the years" is self-serving and conclusory. See *National Service Industries, Inc.*, supra. Rodney's statements in his affidavit regarding his siblings making false statements and misrepresentations to Vaudre about him, regarding Wendell allegedly using his status as executor of Rodney's father's will to coerce Vaudre, and his general statement regarding his siblings' "effort to isolate [Rodney] from [Vaudre]" are "devoid of any specific link, temporal or otherwise," to the execution and contents of the trust-related documents. See *Lipscomb*, supra. Vaudre's statements to Rodney that the 75-acre tract would be his, which statements were purportedly made in relation to the resolution of the family's 1999 dispute, have no bearing on whether her execution of the trust-related documents in 2010 were the subject of undue influence. See *Johnson v. Burrell*, 294 Ga. 301, 304 (2) (2013) (in the context of a contested will, testimony about the testator's declarations regarding his intent to leave property to the person contesting the will were irrelevant because such declarations are "inadmissible to prove the actual fact of an improper influence by another."). The remaining assertions in

Rodney's and Ramona's affidavits and in Rodney's testimony from the prior action do not raise the presumption that Vaudre was subjected to undue influence, and do not demonstrate that she was deprived of her free agency or that the will of another person or persons was substituted for Vaudre's will when the trust-related documents were executed. See *Lewis*, supra; compare *Lipscomb*, supra. For these reasons, the trial court's grant of summary judgment to the trustees was proper, and we affirm.

*Judgment affirmed. Dillard, C. J., and Doyle, P. J., concur.*

13